UNITED STATES of America, Plaintiff,

v.

Kilbourne H. GREENE, Defendant,

v.

Jackie S. O'GUIN, Third-Party Defendant.

No. 66 C 1603.

United States District Court
N. D. Illinois, E. D.

Feb. 7, 1967.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for plaintiff.

Querry, Harrow, Gulanick & Kennedy, Chicago, Ill., for defendant.
Third Party Defendant.

Joseph Marshall, Chicago, Ill., pro se.

No appearance for Third-Party Defendant.

MEMORANDUM OPINION

WILL, District Judge.

This suit was brought by the United States under 42 U.S.C. § 2651[1] to re-

1. (a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be

cover from the defendant the reasonable value of medical care which the United States furnished a victim of the defendant's allegedly tortious conduct. The defendant has raised certain defenses under Illinois law which do not contest the alleged tortiousness of his conduct but which would preclude the tort victim from recovery at this time. These defenses are that the Illinois statute of limitations has run and that the tort victim has given defendant a release from all liability.

Plaintiff has moved to strike these defenses on the ground that while the preliminary question of whether defendant's conduct was tortious may be governed by state law, the United States right of recovery under section 2651 is independent of any procedural or contractual defenses which the tortfeasor might be able to assert against the tort victim under state law. In opposition to the motion to strike, the defendant argues that the United States stands in the legal "shoes" of the tort victim as subrogee of his claim and is therefore subject to all defenses available against the tort victim. The controversy over the nature of the right created in the government by section 2651 is based on the following language in the statute:

> " * * * the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person * * * has against such third person * * *."

Plaintiff, in support of its right of action, cites a law review article [2] which concludes that section 2651 created a separate right of action in the United States which is not subject to any state law procedural defenses which might be raised against an action instituted by the tort victim. The article cited by plaintiff relies in turn on the House of Representatives Judiciary Committee report on the bill.[3] In that report, the House Judiciary Committee amended the language of the bill from "the United States shall be subrogated to any right or claim that the injured or diseased person * * * has against such third person. * * * "[4] to the language presently in the statute.

The House report contains a number of somewhat enigmatic statements which purport to interpret the purpose of this amendment.[5] All these statements emphasize that the purpose of the amendment was to clarify an "independent" right of recovery in the United States, but none states that this independent right remained "subrogated" to the right of the victim.

■■ An analysis of the legal concept of subrogation when coupled with the judicial history which stimulated the passage of the act convinces us that the United States does not stand solely in the shoes of the tort victim through subrogation. The right held by the United States under § 2651 is also a separate federal right which, when asserted, is not subject to procedural or contractual infirmities which might bar an action by the tort victim. However, the Unit-

furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause

of action against the third person to the extent of that right or claim.

2. Bernzweig, Eli P., Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act, 64 Columbia L.R. p. 1257 (1964).

3. H.R.Rep. No. 1534, 87th Cong., 2d Sess. 1 (1962).

4. H.R. 298, 87th Cong., 1st Sess. § 1(a) (1961).

5. See Bernzweig, supra, note 2 at p. 1260, n. 19.

ed States recovery may be barred by substantive defenses such as contributory negligence or lack of negligence.

■■■■ "Subrogation" is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense. In legal context, subrogation is a derivative right held by one who, while under a legal or equitable obligation to another person, pays that person a debt owed by a third party. The right of the payor (subrogee) to seek reimbursement from the third party debtor is derived from, and generally dependent on, the existence of a right in the payee (subrogor) against the debtor.[6] If the payee collects from the debtor, the payor may get a refund from the payee. If, however, the payee fails to demand satisfaction from the debtor, the payor may assert the right of the payee against the debtor. The payor (subrogee), in seeking reimbursement from the third party debtor is subject to any defenses, procedural or substantive, which the third party debtor may have had against the payee (subrogor).[7] These defenses are available against the subrogee because he is merely asserting the subrogor's cause of action; he "stands in the shoes" of the subrogor.

■■■■ Applying the concept of subrogation to the instant situation it is clear that the United States and the alleged tort victim, O'Guin, do not stand in a subrogee-subrogor relationship. A tort victim can only recover expenses which he has or will become liable to pay as a result of the tortious conduct. Since O'Guin was not liable to the government for the treatment he received,[8] he could not recover the reasonable value of the

treatment from the alleged tortfeasor. Therefore no underlying obligation between the tort victim and the alleged tortfeasor exists here to which the government could be subrogated. In the true subrogation situation, it is the subrogee's payment of this underlying obligation which gives him the right to enforce the obligation.[9]

The judicial history which stimulated the passage of § 2651 also clearly shows that the right created by the statute was not solely one of subrogation to the right of the tort victim. The need for a statutory right in the government to recover from a tortfeasor the reasonable value of medical treatment given a serviceman victimized by a tort was the first enunciated in United States v. Standard Oil of California, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947). There, as here, the government sought to recover the reasonable value of medical care rendered a serviceman, a tort victim, after the serviceman had given the tortfeasor a release. The government sought to avoid the effect of the release by asserting a previously unrecognized right of recovery independent of the serviceman's cause of action. The Supreme Court characterized the government's claim as follows:

"The Government's claim, of course, is not one for subrogation. It is rather for an independent liability owing directly to itself as for deprivation of the soldier's services and 'indemnity' for losses caused in discharging its duty to care for him consequent upon the injuries inflicted by the appellants. * * * It is, in effect, for tortious interference by a third person with the relation between the Gov-

**6.** 40 Words and Phrases, p. 656 ff. "Subrogation".

**7.** An exception to this rule occurs where the debtor obtains a release from the subrogor with knowledge of the subrogee's interest. Equity will prohibit the use of the release as a defense against an action by the subrogee.

**8.** United States v. Ammons, 242 F.Supp. 461 (D.C.Fla.1965).

**9.** For example, an insurer who pays its insured's medical expenses resulting from a tort has a right of subrogation. The tortfeasor has an obligation to pay for the medical expenses because the insured is under an obligation to pay for the medical care he receives. Here the tortfeasor has no such obligation because the tort victim received medical care from the government which the victim is not liable to pay.

ernment and the soldier and consequent harm to the Government's interest, rights and obligations in that relation, not simply to subrogation to the soldier's rights against the tortfeasors." 332 U.S. at 304, n. 5, 67 S.Ct. at 1606.

In holding that recognition of such novel rights should come from the Congress rather than the judiciary the court further discussed the nature of the rights asserted in light of analogous situations.

"Bringing the argument down to special point, counsel has favored us with scholarly discussion of the origins and foundations of liabilities considered analogous * * *. These embrace particularly the liabilities created by the common law, arising from tortious injuries inflicted upon persons standing in various special legal relationships, and causing harm not only to the injured person but also, as for loss of services and assimilated injuries, to the person to whom he is bound by the relation's tie. Such, for obvious examples, are the master's rights of recovery for loss of the services of his servant or apprentice; the husband's similar action for interference with the marital relation, including loss of consortium as well as the wife's services; and the parent's right to indemnity for loss of a child's services, including his action for a daughter's seduction." [10]

In all the varied causes of action listed above as well as the right asserted here under section 2651, the cause of action against the tortfeasor was an independent claim which could not be asserted by the victim. Thus the injured servant cannot seek damages for his master's loss of the servant's services; the injured wife, her husband's loss of consortium; nor the injured child, his parent's right to the child's services.

That the independent right asserted by the government in *Standard Oil* is the same right which the Congress intended to create through § 2651 is clear. Congress has acknowledged that the stimulus to passage of § 2651 was the directive of the Supreme Court in *Standard Oil*.[11] Our study of the judicial heritage of section 2651 convinces us the Congress did not intend to create only a right of subrogation. Furthermore, our attempted application of the legal analysis which underlies the concept of subrogation discloses the Congress could not have created a subrogation in the government for medical care it had dispensed even if Congress had so desired. The tortfeasor had no obligation to pay the tort victim for medical care which the victim had received gratis. Therefore, no underlying obligation existed which could support a subrogation analysis.

Since we conclude that the right of the government under § 2651 is a federal right separate from that of the tort victim, it follows that the tort victim did not have the power to contract away the right of the government. It also follows that the government's right is not subject to procedural infirmities which the victim's claim may have under state law. A federal cause of action is governed by federal rather than state procedure. We therefore grant plaintiff's motion to strike the defenses of the state statute of limitations and the release given by the tort victim.

The plaintiff's motion to strike certain of the defenses set forth in the answer is granted. An appropriate order will enter.

---

10. 332 U.S., at 311, 312, 67 S.Ct. at 1610.

11. Senate Report No. 1945, Aug. 28, 1962; 1962 U.S.C.Cong. and Admin.News at p. 2637.