WILLIAM HEDGEBETH, AN INFANT BY HIS *GUARDIAN AD LITEM*, BERTHA E. MEEK AND BERTHA E. MEEK, INDIVIDUALLY, PLAINTIFFS, v. LEONARD E. MEDFORD, SR., DEFENDANT.

Argued May 9, 1977—Decided September 21, 1977.

362

*Mr. Myron J. Bromberg* argued the cause for appellants *amici curiae* Trial Attorneys of New Jersey and the New Jersey State Bar Association (*Mr. Joseph Mezzacca, Jr.,* attorney and on the brief).

*Mr. Robert E. Popkin,* Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Popkin,* on the brief).

The opinion of the court was delivered by

PASHMAN, J. The single question in this case is whether the State's right of subrogation under the New Jersey Medical Assistance and Health Services Program (Medicaid), pursuant to *N. J. S. A.* 30:4D–7(j), is governed by equitable principles. The State asserts that principles of equitable subrogation normally applied to private insurance carriers are inapplicable under the instant statute. Accordingly, it argues that in seeking reimbursement from a Medicaid recipient who has been successful in obtaining a recovery from a third party tortfeasor, it need not pay its pro rata share of that person's counsel fees.

## I

The New Jersey Medicaid statute is an outgrowth of Title XIX of the Federal Social Security Act, which provides grants to states for such medical assistance programs. 42 *U. S. C. A.* § 1396 *et seq.* As such, the state plan is designed to provide "all benefits for medical assistance provided by the [federal act]" to persons who would otherwise be without sufficient resources to obtain such funds. *N. J. S. A.* 30:4D–2. It is also required by the federal legislation to contain certain mandatory provisions, among which is 42 *U. S. C. A.* § 1396a(a)(25), which provides in pertinent part, "[that] a state plan for medical assistance must"

provide (A) that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan)

arising out of injury, disease, or disability, * * * and (C) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;

*N. J. S. A.* 30:4D–7(j) repeats the language of the federal provision, adding that "[i]n any case where such a legal liability is found the department [of institutions and agencies, now human services] shall be subrogated to the rights of the individual for whom medical assistance was made available."

 As we interpret the act, the State has two avenues by which it may seek reimbursement for Medicaid payments: it may either institute an action directly against the tortfeasor who is liable for the medical expenses or seek recovery by way of the Medicaid recipient through a right of subrogation. This conclusion is in harmony with the rights accorded the federal government under the parallel federal provision.[1] *See United States v. Merrigan,* 389 *F.* 2d 21, 24 (3 Cir. 1968); *Maddux v. Cox,* 382 *F.* 2d 119, 124 (8 Cir. 1967); *United States v. Greene,* 266 *F. Supp.* 976, 978–79 (N. D. Ill. 1967); *Tolliver v. Shumate,* 151 *W. Va.* 105,.150 *S. E.* 2d 579, 582 (1966). *See generally* Long, "The Federal Medical Care Recovery Act: A Case Study in the Creation of Federal Common Law," 18 *Vill. L. Rev.* 353, 372 (1973); Bernzweig, "Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act," 64 *Colum. L. Rev.* 1257, 1265 (1974).

---

[1]The federal government's right of subrogation under the act· is governed by state law and may be· exercised only where the Medicaid recipient is entitled to recover from the tortfeasor for medical expenses paid under the act. *See United States v. Merrigan, supra,* 389 *F.* 2d at 24. It is clear that such a right exists in this State since it is settled that a tort victim may recover damages even though he has already received payments from a "collateral source." *See, e. g., Patusco v. Prince Macaroni, Inc.,* 50 *N. J.* 365, 368 (1967). This conclusion is supported by the express wording of the statute, which provides for a right of subrogation.

⁀Although the state statute contains no provision expressly referring to an independent right of recovery, as does 42 *U. S. C. A.* § 2651 in establishing such a federal right, we conclude that the existence of such a right is evident from the language of that section and the legislative history surrounding the passage of *N. J. S. A.* 30:4D-7(j). The mandate in 42 *U. S. C. A.* § 1396a(a)(25)(C), directing the states to "seek reimbursement," is expressly embodied in our own provision. This language must be read in *pari materia* with the rights existing under the federal scheme for seeking reimbursement, and more specifically, with the independent right of recovery specified in 42 *U. S. C. A.* § 2651.

This interpretation of our act comports with the Senate report accompanying the original version of 42 *U. S. C. A.* § 1396, which stated that "if medical assistance is granted and legal liability of a third party is established later, the State or local agency must seek reimbursement from such party." The Report of the Committee on Finance to the United States Senate, on the Social Security Amendments of 1967, 90 Cong., 1 Sess., S. R. No. 744 at 184, U. S. Code Cong. & Admin. News 1967, pp. 2834, 3022. The House report contained similar language. Report on Committee of Ways and Means on H. R. 12080, 90 Cong., 1 Sess. H. R. No. 544 at 123. The legislative history of our own statute contains no reference to this independent right of recovery, but the concern for costs of the program voiced by many legislators suggests an unmistakable intent to afford the State every opportunity to recoup its payments from third parties. *Public Hearing before Senate and Assembly Committees on Institutions and Welfare on Concurrent Resolution No. 26* (Medicaid) (April 11, April 19 and April 26, 1969) (hereafter "Public Hearing"). Thus we interpret the additional reference to a right of subrogation in *N. J. S. A.* 30:4D-7(j) as a precautionary measure by the Legislature to clearly define these two routes of recovery by the State.

## II

In the instant case payments amounting to $481.40 were made under the Medicaid scheme to William Hedgebeth, an infant-pedestrian who was injured on September 10, 1970 when he was struck by a car. The infant's mother, suing both individually and as guardian *ad litem* for the child, sought compensation for loss of services and future earnings and for medical expenses resulting from his injuries. Following a jury verdict finding liability by the defendant tort-feasor, Medford, the parties reached a settlement. The trial court's order embodying the terms of the settlement awarded $3,000 to the infant and $4,500 to the mother, with medical bills, costs and the $1,875 counsel fee to be paid out of the latter amount.

The Division of Medical Assistance and Health Services first learned of the recovery when plaintiffs requested payment of the judgment from the Unsatisfied Claim and Judgment Fund. *N. J. S. A.* 39:6–61 *et seq.* Acting on behalf of the Division, the Attorney General filed a cross-motion with the trial court asking for $481.40 out of the judgment as reimbursement for Medicaid payments to Hedgebeth. Although the trial judge initially considered reopening the judgment on the ground that the parties had not been given timely notice of the State's claim,[2] he held that the State's right to be reimbursed for Medicaid payments under the act was subject to payment of its pro rata share of attorneys' fees on the amount recovered. 130 *N. J. Super.* 1, 4 (Law Div. 1974). Accordingly, he ordered plaintiffs to pay the State

[2]Initially, there had been some confusion as to whether James or William Hedgebeth had received payments for medical treatment. Although the State had sent letters to plaintiff on February 26 and March 29, erroneously asserting that James had received the payments, it correctly notified them on April 30, 1974 of its claim for payments made to William. Following the trial court's decision, no dispute as to this issue arose, and plaintiffs have not asserted that the judgment should be reopened.

$361.05, the amount of Medicaid payments less the State's pro rata share of counsel fees, $120.35.

The Appellate Division reversed in a unanimous *per curiam* decision. 139 *N. J. Super.* 41 (1976). In rejecting the trial court's application of the rule governing private insurance contracts, the court emphasized the legislative aim of conserving public funds and the "absence of any specific legislative authorization, federal or state, to deduct a pro rata share of counsel fees from third-party liability recoveries." *Id.* at 46. It found support for its result in *Fireman's Fund Indemn. Co. v. Batts,* 11 *N. J. Super.* 242 (App. Div. 1951), which held that a pro rata share of counsel fees need not be deducted where reimbursement was sought pursuant to the workers' compensation provisions. Additionally, it noted that the infant had technically not incurred any costs in the action because the trial court had ordered his mother to pay counsel fees out of her award; therefore, it concluded, the State would not be obligated to pay a share of counsel fees even if equitable principles were applied.

We granted plaintiffs' petition for certification *nunc pro tunc,* 71 *N. J.* 519 (1976), and allowed the case to be argued solely by the Trial Attorneys of New Jersey and the New Jersey State Bar Association in their capacity as *amici curiae.* For the reasons discussed below, we reverse the judgment of the Appellate Division and hold that the State's right to recovery under the Medicaid Act is subject to equitable principles. Accordingly, we find that the State, in seeking to benefit from a Medicaid recipient's judgment against a third-party tortfeasor, must pay its pro rata share of counsel fees incurred in obtaining that recovery.

## III

Initially, we note that this dispute would have been resolved under settled principles if the same language employed in the Medicaid provision in question had appeared instead in a contract by a private insurance carrier. In this

State a right of subrogation carries with it the equitable requirement of paying a pro rata share of counsel fees. See *Breslin v. Liberty Mut. Ins. Co.*, 125 *N. J. Super.* 320, 327 (Law Div. 1973), rev'd on other grounds 69 *N. J.* 435 (1976); *Klacik v. Kovacs*, 111 *N. J. Super.* 307 ,(App. Div. 1970), certif. den. 57 *N. J.* 237 (1970). Although earlier cases in other jurisdictions sometimes had refused to follow this rule, *see, e. g., Cary v. Phoenix Ins. Co.*, 83 *Conn.* 690, 78 *A.* 426 (1910); *Pontiac Mut. County Fire & Lightning Ins. Co. v. Sheibley*, 279 *Ill.* 118, 116 *N. E.* 644 (1917); *Illinois Ins. Exch. Ins. Co. v. Braun*, 280 *Pa.* 550, 124 *A.* 691 (1921); *John Wanamaker, New York, Inc. v. Otis Elevator Co.*, 228 *N. Y.* 192, 126 *N. E.* 718 (1920), it is now clearly accepted. *See, e. g., Commercial Stand. Ins. Co. of Ft. Worth v. Combs*, 249 *Ark.* 533, 460 *S. W.* 2d 770 ,(1970); *General Exch. Ins. Corp. v. Driscoll*, 315 *Mass.* 360, 52 *N. E.* 2d 970, 973 (1944); *National Union Fire Ins. Co. v. Grimes*, 278 *Minn.* 45, 153 *N. W.* 2d 152, 156 (1967). *See generally* Appleman, 6A *Insurance Law and Practice* (1973 ed.), § 4096 at 287, n. 73.35; 8 *Insurance Law and Practice (Supp.)*, § 4935 at 366; Annot., "Attorney's fee-recovery from insurer," 2 *A. L. R.* 3d 1441 (1965).

This rule is based on the equitable principle that a carrier should not be entitled to enjoy the fruits of the assured's judgment against a tortfeasor without contributing in any way to the costs or burdens of litigating that claim.[3] *Breslin v. Liberty Mut. Ins. Co.*, 69 *N. J.* 435, 439 (Pashman, J., dissenting); *Klacik v. Kovacs, supra*, 111 *N. J. Super.* at 312; *Brown v. T. W. Phillips Gas & Oil Co.*, 105 *F. Supp.* 479 (*W. D. Pa.* 1952). The fact that an independent action might have been brought in order to obtain reimbursement for

---

[3] It has often been stated that the doctrine of subrogation is equitable in nature. *See, e. g., Reese v. AMF-Whitely*, 420 *F. Supp.* 985, 989 (D. Neb. 1976); *Liberty Mut. Ins. Co. v. Thunderbird Bank*, 113 *Ariz.* 375, 555 *P.* 2d 333 (1976); *Restatement of Restitution*, § 162 at 653 (1937).

amounts which had been paid under a policy does not militate in favor of an opposite conclusion since the insurer still would have had to bear the costs of reasonable attorneys' fees.

The State, however, argues that the equitable principles underlying the subrogation doctrine are inapplicable where a comprehensive statutory scheme is concerned. In support of this proposition it urges the Court to adopt the position taken in cases dealing with workers' compensation; in particular, it relies heavily on the reasoning in *Fireman's Fund Indemnity Co. v. Batts, supra.* Additionally, it argues that payment of a pro rata share of counsel fees would violate *N. J. S. A.* 52:17A–4, 13, prohibiting the State from retaining private counsel who is not appointed by the Attorney General and approved by the Governor. We do not find these arguments to be persuasive.

The main thrust of the State's argument is related to the fact that it has an independent right of recovery under the act. Relying upon *United States v. Nation,* 299 *F. Supp.* 266 (N. D. Okl. 1969), it argues that since no deduction for plaintiffs' fees would have been allowed if it had chosen to seek reimbursement directly from the tortfeasor, no distinction should be made where recovery is sought through a right of subrogation. But there is no reason to believe that the existence of an independent right of recovery by the State should affect the equitable nature of the State's right where it seeks reimbursement through subrogation. Significantly, federal cases considering the parallel federal provisions have emphasized the fact that the two alternative ways of seeking recovery are independent of each other. See *ante* at 366. At least one court has referred to the government's right as being "an equitable remedy of subrogation," *United States v. Merrigan, supra,* 389 *F.* 2d at 24; and in *United States v. Greene, supra,* it was said:

"Subrogation" is a term of legal art which we assume would not be employed by the drafters of the statute unless they intended it to be construed in its normal sense. In legal context, subrogation

is a derivative right held by one who, while under a legal or equitable obligation to another person, pays that person a debt owed by a third party.

[266 *F. Supp.* at 979]

Similarly, the Appellate Division predicated its holding on the ground that the Legislature, in the enactment of *N. J. S. A.* 30:4D-7(j), did not specifically authorize the deduction of the costs and expenses of litigation in effectuating a third party recovery. There is no basis, however, for concluding that the Legislature did not intend by its very careful use of the term "subrogation" to import the equitable incidences of that remedy. As we pointed out, that doctrine is distinctively equitable in nature and is generally understood to mean that a party entitled to the right of subrogation should bear or share the reasonable costs which have been incurred in bringing that right to fruition.

Furthermore, the result reached today should not frustrate the legislative policy inherent in the mandate to seek reimbursement. Although the history of the act indicates a strong legislative desire to minimize the costs of the program, see *ante* at 366, we cannot conclude that the Legislature would have intended a needy recipient to subsidize the State's recovery of medical expenses.

*Fireman's Fund Indemnity Co. v. Batts, supra,* is easily distinguishable. Although some courts have characterized a carrier's right to reimbursement under workers' compensation as a right to "statutory subrogation," see *Roberts v. All American Engineering Co.,* 104 *N. J. Super.* 1, 8 (App. Div. 1968), certif. den. 53 *N. J.* 351 (1969); *Prudential Ins. Co. v. Laval,* 131 *N. J. Eq.* 23, 26 (Ch. Div. 1942), that statute contains no express provision for a right of "subrogation" as does *N. J. S. A.* 30:4D-7(j). Moreover, *Batts* was decided under a statute which specifically authorized a carrier to seek reimbursement from an employee if his recovery, after "the expenses of suit and attorney's fee" were deducted, was equivalent to or greater than the employer's liability. *L.* 1936, *c.* 162, § 1 at 382. Under the State's interpretation of

the Medicaid statute, if the net amount recovered from the tortfeasor after deduction of counsel fees and expenses, is equivalent to, or less than, the amount received in Medicaid payments, the State would be in a position to demand the entire recovery. In such a situation the victim would be left to bear the entire cost of bringing the suit, including counsel fees, even though the entire benefit of the judgment went to the State.

Furthermore, we note that it is difficult to draw any conclusion as to legislative intent from the workers' compensation experience since immediately following the decision in *Batts* the Legislature amended that statute to require a carrier seeking reimbursement to deduct the employee's expenses of suit and attorneys' fee from its recovery. *N. J. S. A.* 34:15–40. If anything, this would support *amici's* argument that traditional equitable principles should be applied regardless of whether reimbursement is sought pursuant to a statutory scheme.

Our recent decision in *Breslin v. Liberty Mut. Ins. Co., supra,* is not to the contrary. The Court was concerned solely in that case with whether to apply New York law in deciding whether attorneys' fees were deductible from a disability insurance carrier's lien against an employee's third party recovery. As the Appellate Division there noted:

> The conflict of laws between the two states is clear: New Jersey favors contribution to the costs of suit by the insurer where such insurer has benefited from a third-party recovery; New York law precludes such deductions for attorneys' fees and costs from the liens of disability insurers.
>
> [134 *N. J. Super.* 357 at 362.]

Reiterating the fact that the subrogation right had arisen by virtue of the law of a sister state, and not as a matter of private insurance law, the court held:

> We consider the distinction to be crucial. * * * In the instant case, . . ., the issue is not what the local law should be, but rather

whether that law, or a conflicting foreign law, should apply. We have concluded that New York law should apply.

[*Id.* at 366.]

We affirm substantially for the reasons set forth in the Appellate Division opinion, adding that the policy reasons favoring the rule in this State were insufficient to overcome the requirement that foreign law be applied.

██ Nor can we accept the State's argument that a deduction for a pro rata share of counsel fees would be tantamount to the State's hiring plaintiffs' counsel, and therefore violative of *N. J. S. A.* 52:17A–4 or 13. These provisions were not intended to prohibit the State from paying its fair share of counsel fees where no formal relationship exists between the State and private attorneys, and a deduction for fees is specifically authorized under a separate statutory provision. *See State v. United States Steel Corp.,* 22 *N. J.* 341, 360 (1956) (*N. J. S. A.* 52:17A–13 did not prevent attorneys from receiving a fee under *N. J. S. A.* 2A:37–30 and 35); *State v. Otis Elevator Co.,* 12 *N. J.* 1, 9 (1953) (*N. J. S. A.* 2:53–23 has the effect of removing other statutory obstacles to payment of fee, such as *N. J. S. A.* 52:17A–13).

We find the treatment of a similar argument in *Furia v. Philadelphia,* 180 *Pa. Super.* 50, 118 *A.* 2d 236 (Super. Ct. 1955) to be persuasive. In that case the city attempted to exercise a right of subrogation arising out of payments to a public employee under a disability benefits statute. The Court found that requiring the city to pay a pro rata share of counsel fees would not violate the prohibition on hiring private counsel. As under our statute, the relevant inquiry focused on the nature of the relationship between the private attorney and the city. The court explained that there had been no contract, either special or implied, between the city and the attorney.

█ Finally, we need deal only briefly with the assertion that a deduction for counsel fees is not required because the fees in this case were to be paid entirely out of the mother's

recovery. We are satisfied that both awards — to the mother and the infant — should be treated alike for the purposes of the State's claim. Even if a technical distinction exists between the awards made to the mother and the child, such an argument runs counter to the overriding purpose of the statute. It is logical to assume that since the mother's recovery was also to be used to pay the child's medical bills, there was a substantial unity between the two awards.

Accordingly, we conclude that where the State seeks to exercise its right to be subrogated to a Medicaid recipient's claim against a third party, it must act in accordance with equitable principles. We therefore hold that the State must pay its pro rata share of counsel fees in seeking to obtain reimbursement of the $481.40 paid to Hedgebeth. The judgment of the Appellate Division is reversed. Plaintiffs are hereby directed to pay the State $361.05, which is the amount of the Medicaid payment of $481.40 less the State's pro rata share of counsel fees, $120.35.

SCHREIBER, J., dissenting. I must respectfully dissent from the proposition that an attorney for a medicaid recipient may charge the State for legal services in the absence of any express or implied authorization to recover monies due the State.

The issue here is whether the medicaid beneficiary's attorney is entitled to a counsel fee from the State irrespective of any notice to the State of the rendition of such services or consent by the State thereto.

Conspicuous by its absence is any statutory provision which states that the medicaid recipient's attorney may charge the State for legal fees in connection with recovery of the funds to which the State is entitled. The federal grants to states for medical assistance programs require that a state must seek reimbursement from third parties found legally responsible for the injury, disease or disability which gave rise to the medical assistance. 42 U. S. C. § 1396a(a) (25) (1974). The regulations promulgated by the Secretary of Health,

Education and Welfare in conformity with the statute state that:

> The State or local agency will seek reimbursement from a third party for assistance provided when the party's liability is established after assistance is granted and in any other case in which the liability of a third party existed, but was not treated as a current resource. 45 *C. F. R.* § 250.31(a)(4) (1976).

New Jersey has met the obligation by enacting *N. J. S. A.* 30:4D-7(j) which imposes the duty on the Commissioner of the Department of Institutions and Agencies

> To take all reasonable measures to ascertain the legal liability of third parties to pay for care and services (available under the plan) arising out of injury, disease, or disability; where it is known that a third party has a legal liability, to treat such legal liability as a resource of the individual on whose behalf the care and services are made available for purposes of determining eligibility; and in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual, to seek reimbursement for such assistance to the extent of such legal liability. In any case where such a legal liability is found the department shall be subrogated to the rights of the individual for whom medical assistance was made available.

The use of the word "subrogated" in the New Jersey Medical Assistance and Health Services Act quoted above refers only to the statutory right of reimbursement subject to the defenses which the third party may have against the medicaid recipient.[1] The legislature's use of the word "subrogated" in this sense is confirmed by the fact that

---

[1] The Federal Medicare Recovery Act, 42 *U. S. C.* § 2651 *et seq.* (1973), empowers the federal government to recover the reasonable value of medical treatment and hospital care it has furnished from a third party tortfeasor who caused the injury. The act states that the government "shall, as to this right be subrogated to any right or claim that the injured" person has against the third party. 42 *U. S. C.* § 2651(a) (1973). In construing this act in *United States v. Nation*, 299 *F. Supp.* 266 (N. D. Okl. 1969) it was held that the United States was entitled to reimbursement without deduction of the counsel fee.

when the New Jersey Medical Assistance and Health Services Act was enacted in 1968, *N. J. S. A.* 30:4D–1 *et seq.,* there was no reason to expect that an insurer's reimbursement recovery would be subject to deduction of a pro rata share of the insured's counsel fees. It is probable that the legislature would have expressly provided for a deduction of counsel fees if it so desired, particularly in view of the decision in *Fireman's Fund Indemnity Co. v. Batts,* 11 *N. J. Super.* 242 (App. Div. 1951). That case held that a worker's compensation carrier was entitled to reimbursement without deducting the attorney's counsel fee. In 1951 the legislature amended *N. J. S. A.* 34:15–40, *L.* 1951, *c.* 169, § 1, to provide expressly for such deduction under the Workers' Compensation Act. *Klacik v. Kovacs,* 111 *N. J. Super.* 307 (App. Div.), certif. den. 57 *N. J.* 237 (1970), the first pronouncement in this State holding that reimbursement of the insurer under a subrogation contractual right should be made after deduction of a pro rata share of the insured's counsel fee expended to recover the claim, was decided two years *after* enactment of the Medical Assistance and Health Services Act.

Furthermore, the public policy of this State has been generally to permit only the Attorney General or his designee to represent the State, although private counsel could be retained by him. In the light of this policy and the legislative history reflected in the time sequence of the 1951 Workers' Compensation Act interpretation and subsequent amendment, enactment of the New Jersey Medical Assistance and Health Services Act in 1968, and adjudication of *Klacik v. Kovacs, supra,* in 1970, evidence of the legislature's intent not to provide a fee for the subrogor's attorney is overwhelming.

Even though an express provision authorizing deduction of counsel fees is absent, I would hold that the State is responsible for its proportionate share of those counsel fees where the Attorney General has consented to the action taken on behalf of the State by the attorney for the medicaid

recipient. This procedure conforms with the statutory limitations that only the Attorney General and private counsel retained by him may represent state departments in actions brought by them. *N. J. S. A.* 52:17A–4 and *N. J. S. A.* 52:17A–13. *See Keenan v. Bd. of Chosen Freeholders of Essex Cty.*, 106 *N. J. Super.* 312 (App. Div. 1969). No decisions of our courts have ever interpreted these provisions to permit an officious volunteer to represent the State. Creation of an attorney-client relationship under these circumstances is peculiarly inappropriate where the State has attorneys in the office of the Attorney General available to litigate these matters. To compensate private counsel when staff attorneys are being paid to handle these actions results in a needless expenditure of public funds.

The two cases cited by the majority to support the proposition that *N. J. S. A.* 52:17A–4 and 13 do not apply, 74 *N. J.* at 373, *State v. United States Steel Corp.*, 22 *N. J.* 341 (1956) and *State v. Otis Elevator Co.*, 12 *N. J.* 1 (1953), confirm the authority of the Attorney General to designate counsel. Both were escheat cases. In *Otis Elevator,* this Court stated that absent *N. J. S. A.* 52:17A–13 "the Attorney General would have been without authority to appoint special counsel to prosecute" escheat proceedings for the State. 12 *N. J.* at 9. In *United States Steel,* this Court recognized the right of the attorney, who had been appointed by the Attorney General to act on behalf of the State in accordance with *R. S.* 52:17A–13, to the statutory allowance of counsel fees. 22 *N. J.* at 360–361.

The majority places substantial reliance for holding inapplicable the statutory provisions requiring Attorney General designation on a lower Pennsylvania court decision, *Furia v. City of Philadelphia,* 180 *Pa. Super.* 50, 118 *A.* 2d 236 (1955). A city employee had been injured and was paid wages by the City of Philadelphia during his disability. He recovered damages, including lost wages, against the third party tortfeasor. The court held that the City was entitled to be reimbursed because of equitable subrogation

and, since *only* the injured employee could sue the third party and there was no statutory requirement that the city solicitor represent the employee in the suit, counsel fees should be deducted. Conspicuous by their absence were any statutory provisions such as are involved here both with respect to the governmental right to institute an action and the prohibition against use of outside counsel.

The requisite that the subrogee be given notice and an opportunity to act on its own before being charged with a proportionate share of the subrogor's counsel fees has been generally applied in equitable subrogation cases. *Klacik v. Kovacs,* 111 *N. J. Super.* at 312, adopted the Nebraska position reflected in *United Services Automobile Association v. Hills,* 172 *Neb.* 128, 109 *N. W.* 2d 174 (1961). The Nebraska court held that a fee deduction was proper when the insurance carrier, after being notified by the assured's attorney of his intention to sue, refused to intervene in that proceeding and acquiesced in the plaintiff's action. 109 *N. W.* 2d at 177. The court reasoned that the insurance company had thereby elected to proceed through the assured and had abandoned its right to sue directly. 109 *N. W.* 2d at 178. No such election was made in this case. The State Division of Medical Assistance and Health Services and the Attorney General were not aware of the proceedings against the third party tortfeasor until judgment had been entered.

The majority assumes that the medicaid recipient's attorney could and would charge his client for recovery of the sums due the State and that this could possibly cause an indigent medicaid recipient to finance the State's recovery. Such a legal charge against the recipient would be improper, for the services rendered would not have been on behalf of the indigent. The attorney knew or should have known that the right to the special damages based on the medicaid payment belonged to the State and not his client. He could not justifiably assess his client for that recovery. Having proceeded without notifying the Attorney General

and obtaining his acquiescence, the attorney became an officious volunteer. "[A] volunteer never can claim the benefit of the law of subrogation." *Fay v. Fay,* 43 *N. J. Eq.* 438, 440 (Ch. 1887); *Meier v. Planer,* 107 *N. J. Eq.* 398, 404 (Ch. 1930). Equitably, under the circumstances here, he would not be entitled to a legal fee from the State or from his client. *See also* 12 *Williston, Contracts,* § 1479, at 276 (3d ed. 1970).

I would affirm.

Justice MOUNTAIN joins in this opinion.

*For reversal*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD and HANDLER—5.

*For affirmance*—Justices MOUNTAIN and SCHREIBER—2.