722 A.2d 581 (1999)
317 N.J. Super. 464
William WALDMAN, Commissioner, Department of Human Services, State of New Jersey and Velvet G. Miller, Director, Division of Medical Assistance and Health Services, State of New Jersey, Plaintiffs/Intervenors-Appellants,
v.
Lisa Ann CANDIA, Rose Mary Candia and Michael Candia, Plaintiffs-Respondents,
v.
Vito Francis Pakonis and Clara Maass Medical Center, Defendants.
William Waldman, Commissioner, Department of Human Services, State of New Jersey and Karen Squarrel, Acting Director, Division of Medical Assistance and Health Services, State of New Jersey, Plaintiffs/Intervenors-Appellants/Cross-Respondents,
v.
Ayana Morris, an infant by her guardian ad litem, Jodi Morris and Jodi Morris, individually, Plaintiffs-Respondents/Cross-Appellants,
v.
Joseph A. Calvetto, Frank A. Cocco, Ocean Gynecological and Obstetrical Associates, Kimball Medical Center and Virginia Post, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1998.
Decided January 28, 1999.
*582 Mary A. Hurley, Deputy Attorney General, for appellants (Peter Verniero, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Hurley, on the brief).
William C. Slattery, Short Hills, for the Candia respondents (Slattery, McElwee & Jespersen, attorneys; Mr. Slattery, on the brief).
Bruce D. Vargo, Short Hills, for the Morris respondents/cross-appellants (Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys; Cynthia A. Walters, on the brief).
Before Judges KESTIN, WEFING and CARCHMAN.
The opinion of the court was delivered by KESTIN, J.A.D.
These appeals, consolidated for the purpose of decision, raise the question whether, and to what extent, Medicaid payments made on behalf of two disabled young women must be reimbursed to the State after damages were recovered in settlements with tortfeasors for injuries associated with the disabilities. Both cases involve interpretations of federal Medicaid legislation, 42 U.S.C. §§ 1396a-1396u,[1] and State counterpart provisions, N.J.S.A. 30:4D-1 to -19.1, including questions concerning State Medicaid liens and the funding of special needs trusts *583 (SNT).[2] We hold that each trial court, in a different way, incorrectly applied the governing federal and state statutes. Accordingly, in Candia, we reverse; in Morris, we affirm in part and reverse in part. In both cases we remand for modification of the trial courts' orders distributing the proceeds of the settlements.

I.
Lisa Ann Candia, twenty-two years of age when the State filed its complaint for reimbursement in 1996, is an adjudicated incompetent and thus disabled within the meaning of federal Medicaid legislation. 42 U.S.C. § 1396d(g) (1992). She had received medical benefits paid for by the State since 1986. Her parents, Rose Mary and Michael Candia, brought a medical malpractice action against several defendants on behalf of their daughter and themselves. The Division of Medical Assistance and Health Services (DMAHS), the State's Medicaid agency, informed the Candias of their duty to contact DMAHS prior to settlement of their claim in order to establish the amount of DMAHS's Medicaid lien.
The malpractice claim was settled for $700,000, approved by an order filed on April 24, 1996, which provided, inter alia, that $28,112.94, the amount of the State's lien, was to be held by the Candias' attorneys in an interest bearing account subject to further order. The Candias were to notify DMAHS about the existence of these funds with a copy of the order, and DMAHS was to commence a Superior Court action within ninety days for a determination of its entitlement to these funds. If no such action was filed, the funds with accrued interest were to be turned over to Rose Mary and Michael Candia in further satisfaction of their claims.
The order also distributed the balance of the settlement. $400,000 funded an SNT, to be used for Lisa Ann Candia's benefit during her life or thirty years, whichever would be longer. The remainder paid attorneys' fees and expenses as well as Rose Mary and Michael Candia's damage claims.
When DMAHS was notified of the entry of the order, it moved to intervene in the malpractice litigation, arguing that N.J.S.A. 30:4D-7.1(b) obligated the Candias, upon settlement of the litigation, to fully reimburse the State for moneys expended on Lisa Ann Candia's medical care. DMAHS further argued that, according to N.J.S.A. 30:4D-7.1(c), Lisa Ann Candia was deemed to have assigned to the Commissioner of the Department of Human Services (DHS) any rights to support for the purpose of medical care and to payment for medical care from any third party.
After the Candias consented to DMAHS's intervention, the trial court granted summary judgment to the Candias, declining to apply the State's Medicaid lien to the settlement proceeds. The motion judge, in a comprehensive order disposing of the matter, held that 42 U.S.C. § 1396p(a)(1) and (b)(1) preempt state law pursuant to 42 U.S.C. § 1396a(a)(18), and that under these provisions a State may neither recover funds nor impose a lien against the property of an individual prior to her death on account of medical assistance correctly paid on her behalf. In addition, the judge held that the funding of a trust established by a court for the benefit of a disabled person under 65 years of age results in neither temporary nor permanent Medicaid ineligibility, according to 42 U.S.C. § 1396p(c)(2)(B)(iv) and (c)(4). The judge also held on the basis of 42 U.S.C. § 1396p(d)(4), however, that the State is entitled to all of the funds that remain in the trust upon the death of the Medicaid recipient, up to an amount equal to the total medical assistance paid on her behalf. He directed that the $28,112.94 was to be distributed to Rose Mary and Michael Candia instead of to the State, and otherwise approved the distribution of the settlement. It is from this ruling that the State appeals.

II.
Ayana Morris had received medical benefits paid for by the State since her birth in *584 1982. Her mother, Jodi Morris, instituted a medical malpractice action against several defendants on behalf of her daughter and herself. DMAHS informed the Morrises that they were required to contact the Division prior to settlement of the claim in order to establish DMAHS's lien amount.
The claim against one defendant was settled for one million dollars prior to a no cause of action jury verdict. The trial judge, in an order approving the terms of the settlement, provided that $121,560.60, the amount of the State's Medicaid lien, was to be held in an interest bearing account until resolution of separate litigation over reimbursement of the Medicaid benefits. The remainder of the settlement was distributed to the Morris attorneys for fees and costs; to Jodi Morris individually for the purchase of a home in which Ayana Morris would be able to reside; and to an SNT established for the benefit of Ayana Morris.
The State's motion to intervene was granted. The judge ruled that the State was entitled to immediate satisfaction of its Medicaid lien in an amount to be determined by the court, after a plenary hearing. Apparently, the judge considered a hearing necessary because the settlement agreement did not specify how the proceeds were to be allocated in respect of the particular claims embraced in the suit. After the hearing, the judge awarded the State two-thirds of its lien, and directed that the remainder be added to the SNT. The judge reached this result by finding a part of the settlement attributable to "recovery for medical expenses," and the remainder related to "the child's future needs." Based on this distinction and on "the equities of the case," he held that DMAHS's lien attached only to the medical-expenses recovery, and that the remainder was to be reserved for Ayana Morris, subject to reimbursement to the State upon her death from any balance in the SNT then remaining. Thus, while the State's lien was enforced, it was only partially paid. The State appeals from the order to the extent it denied full reimbursement; the Morrises cross-appeal from the order to the extent it required any reimbursement exceeding two percent.

III.
Medicaid is a medical assistance program for eligible low-income individuals, established by Subchapter XIX of the federal Social Security Act, 42 U.S.C. §§ 1396a-1396u. The program is administered jointly by the federal and state governments. While the Act gives state governments broad discretion to determine the extent of medical assistance provided, state programs must comply with federal criteria. 42 U.S.C. § 1396a(a); Schweiker v. Gray Panthers, 453 U.S. 34, 37, 101 S.Ct. 2633, 2636, 69 L. Ed.2d 460, 465 (1981). State programs must also be approved by the federal government. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L. Ed.2d 784, 794 (1980); County of Camden v. Waldman, 292 N.J.Super. 268, 278, 678 A.2d 1101 (App.Div.), certif. denied, 149 N.J. 139, 693 A.2d 109 (1996).
Mandatory federal criteria include: (1) A state shall, by using reasonable measures, ascertain the liability of third parties to pay for care arising out of injury or disease and, where appropriate, seek reimbursement to the extent of such liability, 42 U.S.C. § 1396a(a)(25)(A); and (2) A Medicaid recipient, as a condition of eligibility, must assign to the state any rights to support for the purpose of medical care and any rights to payment for medical care from any third party, 42 U.S.C. § 1396a(a)(45). Subsequently,
[s]uch part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed (with appropriate reimbursement of the federal government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.
[42 U.S.C. § 1396k (1992).]
New Jersey participates in Medicaid pursuant to N.J.S.A. 30:4D-2.
*585 Medicaid benefits are "last resource" benefits. Ibid. Accordingly, reflecting federal requirements, N.J.S.A. 30:4D-7.1(b) provides that every Medicaid recipient or legal representative must "promptly notify [DMAHS] of any recovery from a third party and shall immediately reimburse [DMAHS] in full from the proceeds of any settlement." Further, N.J.S.A. 30:4D-7(k) authorizes DHS to take reasonable measures to ascertain the liability of third parties to the recipient and to seek reimbursement where appropriate. Finally, N.J.S.A. 30:4D-7.1(c) states that a Medicaid recipient, as a condition of eligibility, is deemed to have assigned to the Commissioner any rights to payment against a third party.
Because Medicaid is a program designed for needy individuals, the amount of an individual's financial resources determines Medicaid eligibility. Under an older version of the federal Medicaid statute, trusts were considered "available resources" for the purpose of Medicaid eligibility, regardless of how they were structured. However, a 1993 amendment to the federal statute allowed recipients to establish an SNT, with funds recovered from liable tortfeasors, without losing Medicaid eligibility. 42 U.S.C. § 1396p(d)(4).
In the light of Medicaid eligibility criteria, the Candias and Morrises question the extent to which DMAHS is entitled to recover payments made on behalf of a beneficiary in the circumstances presented. In support of their positions that DMAHS is not entitled to recover any payments, they point to 42 U.S.C. § 1396p(a)(1), which provides:
No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan except
(A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual.... [42 U.S.C. § 1396p(a)(1).]
In addition, the Candias and Morrises maintain that 42 U.S.C. § 1396p(d) puts SNTs beyond the reach of a recovery action by DMAHS. That section reads, in relevant part:
(1) For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.

* * * *
(4) This subsection shall not apply to the following trusts:
(A) A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

[42 U.S.C. § 1396p(d) (1992 & Supp. 1998).]
The State argues that it is entitled to recover expenditures it has made on behalf of the beneficiaries. It maintains that, contrary to the Candias' and Morrises' assertions, section 1396p(a) does not apply to the instant cases because here, the liens were imposed on the property of a third party tortfeasor under the third party recovery rules of 42 U.S.C. § 1396(k) (1992), rather than on property already belonging to the Medicaid beneficiaries. The State also argues that the Candias and Morrises interpret section 1396p(d) incorrectly. According to the State, that section merely stipulates that funds in SNTs will not be considered "available resources" for purposes of determining Medicaid eligibility. The argument is that, while an SNT allows a Medicaid beneficiary to own substantial funds without losing Medicaid eligibility, the statute has no bearing on the State's right to recover payments it has already made on the beneficiary's behalf from settlement proceeds which become *586 available before they are turned over to fund an SNT.[3]
The Candias and Morrises counter with the argument that the New Jersey Medicaid statute does not permit third-party recovery in these cases. See N.J.S.A. 30:4D-7.1(b). They assert that a finding of liability is a precondition for third-party recovery by the State; and contend that, because the Candia matter was settled before trial and the Morris matter was dismissed after being settled, the precondition of liability was not satisfied, thus barring recovery by the State under pertinent third-party principles.
The State's position is correct. First, the argument that the State is barred from imposing a lien on a beneficiary's own property held in an SNT, even if correct, does not affect the State's undisputed right to recover payments it has made from third parties. The State's claim against the settlement proceeds is to be satisfied first, before any of the proceeds are transferred to an SNT. See Cricchio v. Pennisi, 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301, 304 (1997). The New Jersey Supreme Court has held that the New Jersey Medicaid law evinces an "unmistakable intent to afford the State every opportunity to recoup its payments from third parties." Hedgebeth v. Medford, 74 N.J. 360, 366, 378 A.2d 226 (1977). Pursuant to N.J.S.A. 30:4D-7, the State may recover payments made on behalf of a Medicaid recipient either through its right of subrogation to the recipient's claims or through an independent action against the third party tortfeasor. Id. at 365, 378 A.2d 226. The State's subrogation right applies in both of the instant cases, for each claimant recovered damages via the settlement of a cause of action for personal injuries the treatment of which had been paid for by Medicaid funds.
An adjudication of tortfeasor liability is not a prerequisite to invocation of the State's lien rights. To hold otherwise in the contexts presented here would be to elevate form over substance. Patently, the settlements in both of these matters eventuated from claims of injury for the treatment of which Medicaid funds had been expended.
Further, the State is correct in its argument that the third-party recovery and SNT provisions of federal law must be considered independently of each other. The United States Court of Appeals for the Eighth Circuit, on the basis of a fact pattern similar to the ones presented here, recently held that
the SNT amendments do not postpone the state's right to enforce its vested and existing Medicaid lien.... Thus, a state may require a Medicaid lien imposed on the proceeds of a personal injury award or settlement to be satisfied before the remaining funds are placed in an SNT.
[Norwest Bank v. Doth, 159 F.3d 328, 333 (8th Cir.1998).]
The District Court in its opinion, which the Eighth Circuit affirmed, stated explicitly:
May a recipient of Medicaid funds avoid a statutory and contractual obligation to reimburse Medicaid by placing into trust proceeds from a personal injury action? The answer to the question is no.
[Norwest Bank v. Doth, 969 F.Supp. 532, 532 (D.Minn.1997).]
The District Court in Doth also pointed out that interpreting the SNT provision as shielding recoveries in tort actions from a state's recovery action would tend to render the state's right of recovery meaningless. Id. at 534. This is especially true when one considers that Medicaid, as a payor of last resort, is not held responsible to pay for medical care that the Medicaid recipient becomes able to afford. N.J.S.A. 30:4D-2.
Having stated the general principles which govern these matters, we address some specific errors in the trial courts' orders in both cases. In Candia, the motion judge awarded certain funds to Lisa Ann Candia's parents instead of to Lisa Ann herself, presumably to shield those funds from attachment by DMAHS. This was error. For purposes of Medicaid recovery, an award *587 to the beneficiary's parents is considered an award to the beneficiary herself. See Hedgebeth, supra, 74 N.J. at 373-74, 378 A.2d 226. Furthermore, the motion judge's ruling concerning Lisa Ann Candia's continuing eligibility for Medicaid was premature.
The trial judge in Morris also failed to follow Hedgebeth and consider the funds awarded to Jodi Morris, Ayana's mother, as "available funds" for Ayana's care. Ibid. Also, after the judge held a hearing, he allocated Ayana Morris's recovery to specific categories of damages, and compromised the State's lien on that basis. The New Jersey Medicaid statute does not provide for such a hearing; it does not authorize the courts to compromise a Medicaid lien; and it does not distinguish between categories of damages in respect of the State's lien rights. The procedure employed by the trial judge and the result he reached had no basis in law.
In reaching our conclusions, we are mindful of the need to avoid derogating the system of joint Medicaid funding or the manifest policies governing it. The third party liability provisions in the federal Medicaid statute were clearly created to permit recoupment of Medicaid payments. 42 U.S.C. § 1396k(a) (1992); cf. Marmorino v. Newark Housing Auth., 189 N.J.Super. 538, 540-41, 461 A.2d 171 (Law Div.1983). Because the Medicaid program is funded both by the states and by federal financial participation, once a third party payment has been made, the Health Care Financing Administration (HCFA), the federal agency in charge of Medicaid, is entitled to recover its share of Medicaid payments. 42 U.S.C. § 1396k(b) (1992). If a state fails to repay HCFA its legitimate share of a third party recovery before recovery proceeds are paid to the Medicaid beneficiary, HCFA can withhold federal financial participation from the state. The Departmental Appeals Board, Appellate Division, of the United States Department of Health and Human Services so held in Washington Dep't of Social and Health Services, No. A-95-159, 1996 WL 157123 (H.H.S., D.A.B., App.Div., Feb. 7, 1996). Accordingly, the states are bound by their duty of repayment even if they compromise a lien, i.e., even if they decide, based on the facts of an individual case, to allow the beneficiary to retain a larger portion of the recovery proceeds. 42 U.S.C. § 1396b(d)(2)(B). In both cases before us, the trial courts paid insufficient attention to this statutory scheme.
The State is entitled to recover its Medicaid payments in full. To the extent that the trial court judges decided otherwise, their decisions are reversed. The matters are remanded to the respective trial courts for the entry of modified orders conforming with the requirements of this opinion.
Reversed and remanded.
NOTES
[1] All citations to these sections are to the 1998 Supplement, unless indicated otherwise.
[2] A "special" or "supplemental needs trust" is a trust designed for defraying costs of medical care that are not covered by any other public or private benefits program. See In re Lennon, 294 N.J.Super. 303, 306, 683 A.2d 239 (Ch.Div.1996).
[3] We are not here called upon to address questions of continuing Medicaid eligibility or ultimate reimbursement rights.