## Lewis v. Magee Women's Hospital of UPMC

C.P. of Allegheny County, no. GD02-5238.

*James G. Connolly, Thomas E. Crenney* and *David N. Dittmar,* for plaintiffs.

*Terry C. Cavanaugh,* for defendant Magee Women's Hosp.

*Christopher C. Rulis,* for defendant Penn Group Medical Assoc. Inc.

*James Hartline,* for defendant Brown M.D.

*Paula A. Koczan,* for defendant HealthAmerica Pennsylvania Inc.

*Jason W. Manne* and *T. Lawrence Palmer,* for defendant Commonwealth, DPW.

*Wilbur M. Otto,* for MCare fund.

*Kathleen D. Hendrickson,* for amicus curiae, The Family Trust.

WETTICK JR., *A.J.,* July 26, 2004—The objection of the Department of Public Welfare (DPW) to a petition for leave to settle and discontinue minor's claims is the subject of this opinion and order of court. The issue which this opinion addresses is whether funds for a settlement may be placed in a pooled trust rather than a special needs trust.

Petitioners are the parents of Zackery Lewis, a minor with permanent and significant mental and physical disabilities. They seek court permission to have the full amount of a partial settlement of Zackery's medical malpractice action, less attorney fees, a Medicaid lien and expenses, paid to a pooled trust for the benefit of Zackery. DPW contends that the use of a pooled trust is inappropriate in this case; instead, a special needs trust must be used.[1]

Zackery Lewis (date of birth—9/22/92) presently lives with his parents. He has acute and long-term medical problems, including significant respiratory problems, feeding problems, and mild to moderate mental retardation. He will never live or work independently because of these medical problems. In their petition for leave to settle and discontinue their son's claims, Zackery's parents seek court permission to have the full amount of the net settlement funds of nearly $1.85 million paid into a

---

1. Previously, I signed a court order approving a settlement in the amount of $2,950,000. DPW does not question the amount of the settlement.

pooled trust with The Family Trust.[2] DPW contends that a special needs trust is more appropriate for Zackery and that this court should exercise its supervisory discretion to require the use of a special needs trust instead of a pooled trust.

Historically, Medicaid benefits have been "last resort" benefits. See generally, *Waldman v. Candia,* 722 A.2d 581, 585 (N.J. Super. Ct. App. Div. 1999); *Calvanese v. Calvanese,* 710 N.E.2d 1079, 1080 (N.Y. 1999). A person with assets, including trust assets, was not eligible for Medicaid benefits until that person exhausted those assets. Thus, it was difficult to create trusts for a disabled relative that would supplement, rather than supplant, Medicaid benefits.

Through a 1993 amendment to the Social Security Act governing Medicaid, Congress now permits the use of special needs trusts and pooled trusts to benefit persons considered to be disabled.[3] The purpose of these trusts is to provide for the supplemental needs of persons with disabilities whose basic needs are to be met, in large part, through the Medicaid program. Funds placed in these trusts may not be considered "available" resources for purposes of assessing the beneficiary's eligibility for Medicaid benefits. 42 U.S.C. §1396p(d)(4).

A special needs trust, also referred to as a payback trust, is a trust established by a parent, grandparent, legal guardian, or a court for the benefit of one person

---

2. The petition provides for most of the net settlement funds to be used to purchase an annuity. The payments from the annuity will be paid to The Family Trust.

3. Under the Social Security Act, an individual is considered to be disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §1382c(a)(3)(A).

with disabilities. A major feature of the special needs trust is that upon the death of the beneficiary, the Commonwealth of Pennsylvania will receive from any remaining funds in the trust the amount of Medicaid payments made on behalf of the beneficiary during his or her lifetime.[4]

A pooled trust, on the other hand, is created for more than one person with disabilities. In Pennsylvania, this type of trust is governed by the Pooled Trust Act, 62 P.S. §1965.1 et seq.[5] The Act provides that a pooled trust must meet the following requirements: it contains assets of more than one beneficiary; each beneficiary has a disability; the trust is managed by a nonprofit corporation; and a separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, these accounts are pooled by the trust. Accounts in the trust may be established by a parent, grandparent, or legal guardian of an individual with a disability, by an individual with a disability, or by a court. A primary difference between a special needs trust and a pooled trust is that with a pooled trust, upon the death of the beneficiary, the amounts remaining in the beneficiary's account may be retained by the trust for the benefit of other beneficiaries or other individuals with disabilities. This money retained by the trust is not available to the Commonwealth to repay the Medicaid payments made during the beneficiary's lifetime.[6]

4. See 42 U.S.C. §1396p(d)(4)(A).

5. The Pooled Trust Act contains the requirements of the Social Security Act for a pooled trust. See 42 U.S.C. §1396p(d)(4)(C).

6. 42 U.S.C. §1396p(d)(4)(C)(iv) provides that the trust will pay to the state any funds in the beneficiary's account *that are not retained by the trust* equal to the total amount of medical assistance paid on behalf of the beneficiary. As one would anticipate, the trust agreement

In this case, the pooled trust into which Zackery's parents seek to deposit the funds is managed by The Family Trust (a nonprofit corporation). The Family Trust is a mission-based trust with a professional staff of social workers, investment experts, corporate counsel, and volunteer board members. Its mission is to serve people with disabilities and, through trust management, help them lead more fulfilling lives than would be possible at poverty levels. It works with each beneficiary to enable him or her to lead a productive life in the community.

The Family Trust serves over 700 individuals with combined assets of over $12 million. It requires only a minimum balance of $200 for a disabled person to become a beneficiary. Most of The Family Trust's beneficiaries are persons with modest means.

If the request of Zackery's parents for a court order authorizing the deposit of the settlement funds into The Family Trust is granted, most of the net proceeds from the settlement will be used to purchase an annuity that will guarantee Zackery a revenue stream through his lifetime. (The funds not used to purchase an annuity will be paid directly into the pooled trust.) The Family Trust will receive and manage this revenue stream for Zackery's benefit.

DPW's primary disagreement with the use of a pooled trust, rather than a special needs trust, has to do with

---

of The Family Trust retains the funds in a beneficiary's account upon the beneficiary's death. The trust agreement provides that upon the death of the beneficiary, all assets in the beneficiary's account shall be transferred to The Family Trust to be used for providing support for other individuals with disabilities (Petition for leave to settle and discontinue minor's claims, exhibit G, master trust agreement I, article IX).

what occurs upon the death of the beneficiary. DPW contends that I should prohibit the use of a pooled trust because it does not serve the interests of the taxpayers of Pennsylvania. While the use of a pooled trust should be permitted where assets within a beneficiary's account are minimal, DPW contends that the obligation to repay medical assistance should not be voided where it is likely that significant funds will remain upon the beneficiary's death.

DPW contends that a pooled trust is a useful device to obtain professional management services for small estates. But a special needs trust best serves the interests of the taxpayers and persons with disabilities where there is sufficient money to afford an independent fiduciary that is concerned only with the beneficiary's best interests.

There is nothing in the federal or Pennsylvania legislation which supports DPW's position that any standard other than the best interests of the person with disabilities governs a petition to settle and discontinue a minor's claims.

The legislation does not place any limits on the amount of money a person may place in a pooled trust. There is nothing in the federal or state legislation which directs me to give priority to taxpayer interests. There is nothing in the legislation that requires me to find that a pooled trust is inappropriate because it does not provide the same protections to the taxpayers as a special needs trust. If the public policy of the Medicaid program is to maximize protection to taxpayers upon the death of a beneficiary, Congress would not have created a vehicle that permits the funds remaining in the beneficiary's account

to be used for the charitable purpose of providing benefits to other persons with disabilities. Furthermore, if Congress and/or the General Assembly had sought to place a cap on the amount of contributions that may be made into a pooled trust or on the amount of money remaining in the beneficiary's account that may be used for other persons with disabilities, the legislation would have included such a provision.

DPW raises a second objection: The Family Trust might be tempted to spend less money from Zackery Lewis' account on his behalf than would be spent if the balance, upon his death, did not go to serve the needs of other persons with disabilities whose lives might be significantly improved through modest sums of money spent to supplement their needs. This possibility would not exist if the settlement proceeds were placed in a special needs trust.

DPW's objection is not case specific; it would apply to the use of a pooled trust whenever any beneficiary's account is likely to contain funds upon the beneficiary's death. I am not prepared to assume that a mission-based pooled trust will make decisions that focus on any interests other than the best interests of Zackery Lewis.

I find that the request of the parents of Zackery Lewis, to place the settlement proceeds in The Family Trust, is consistent with Zackery Lewis' best interests. In determining what type of trust will best serve Zackery Lewis' interests, they favor a mission-based trust with trained professionals over a traditional trust, the trustee of which may be a trust department of a financial institution. This is a reasonable decision that under these circumstances I will honor.

## ORDER

On July 26, 2004, it is ordered that the objections of the Department of Public Welfare to petitioners' proposal to place settlement proceeds into a pooled trust with The Family Trust are overruled.