Bessie WALKER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 95–CV–128.

District of Columbia Court of Appeals.

Argued June 6, 1996.

Decided Aug. 29, 1996.

Peter J. Vangsnes, with whom Michael H. Feldman and Christopher V. Tisi were on the brief, Washington, DC, for appellant.

Edward E. Schwab, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Before us is the first case that has reached this court requiring us to interpret several provisions of the Health–Care Assistance Reimbursement Act of 1984 ("the Act").[1] The Act generally deals with the right of the District to recover the costs of health-care assistance from third parties who, by reason of tort or contract, would have been liable to the beneficiary for the costs had the beneficiary instead of the District paid the costs. The Act also provides for a lien by the District in the amount of such costs upon any judgment or settlement against the third party. The Act grants the Mayor discretion to waive the District's claim, in whole or in part, if enforcement in a particular case would not be cost effective or would result in "undue hardship" to the beneficiary.

The dispute here stemmed from a wrongful death and survival action brought by appellant Bessie Walker against the American Red Cross on behalf of the estate of appellant's daughter, Tanya Taylor, and Ms. Taylor's three children, appellant's grandchildren. Ms. Taylor died of AIDS in 1990. The theory of the action was that Ms. Taylor had acquired AIDS from a blood transfusion and that the American Red Cross had been negligent in screening its blood donors.

Although the action sought damages on the order of $3 million, the case eventually settled for $350,000.[2] Appellant's attorneys asserted first priority in the recovery for their 40% contingency fee of $140,000 and litigation expenses of, it appears, $42,769.78.[3] The District did not dispute the priority of these fees and expenses.[4] It did, however, assert a right under the Act to recover, as the next priority, the sum of $52,962.82, which it had expended under the Medicaid program for Ms. Taylor's medical care during her illness. Full recovery by the attorneys and the District would leave $114,267.40 for appellant and the children of Ms. Taylor. Appellant attempted to convince the District to compromise its claim on the basis of undue hardship to appellant and the children, and to contribute to the litigation expenses, but the District declined to do so. The trial court ruled that the District's refusal to compromise was not an abuse of discretion, and entered an order that the claimed sum should be paid to the District. Appellant filed a timely appeal to this court. We affirm.

Appellant does not challenge the general principle that under the Act the District may seek reimbursement for its outlays for health care assistance from a third party tortfeasor.[5] Rather, appellant invokes several provisions of the Act that, she contends, require in the circumstances here that the District receive less than full reimbursement for its outlays for Ms. Taylor's AIDS-related medical expenses, with the consequence that appellant and the children of Ms. Taylor would receive more.

1. D.C.Code §§ 3–501 to 3–509 (1994 Repl.). The Act was passed in 1984. Health–Care Assistance Reimbursement Act of 1984, D.C. Law 5–86, 31 D.C.Reg. 2098 (1984). Section 3–507 was amended in 1990. Health–Care Assistance Reimbursement Amendment Act of 1990, D.C. Law 8–99, § 2, 37 D.C.Reg. 1067 (1990); see discussion *infra* pt. I.

2. Appellant acknowledges that her case faced *serious problems*. Ms. Taylor was an intravenous drug user and had tested negative for HIV almost two years after the date of the allegedly tainted transfusion.

3. The precise amount of the claimed litigation costs is not entirely clear from the record. Some submissions to the District apparently put the costs around $33,000 and the District uses that figure in its brief. However, the record contains an affidavit of January 1994 that uses the figure of $42,769.78.

4. Nowhere in the record is any mention made of a possible reduction in the amount of attorneys' fees or litigation cost reimbursements.

5. We were advised at oral argument that Medicaid assistance is not ordinarily repayable by the recipient, even in the event of subsequent acquisition of wealth. Rather, it appears, such assistance is treated as a grant based upon the then-existing financial status of the recipient. The chose in action against the third-party tortfeasor is thus considered an existing but inchoate property interest of the recipient, although only with respect to Medicaid expenses relating to the particular tort. In the case before us, for example, in addition to the $52,962.82 expended for Ms. Taylor's AIDS-related health expenses, the District expended an additional approximately $40,000 for expenses relating to an unrelated gall bladder ailment of Ms. Taylor, for which no reimbursement was sought.

## I.

We turn first to appellant's invocation of D.C.Code § 3–504(b), a provision of the Act that specifically addresses the possibility of a waiver of any reimbursement right under the Act. That subsection provides, in pertinent part:

> (b) The Mayor may waive, in whole or in part, enforcement of the District's claim against a third party if enforcement in a particular case ... would result in undue hardship to the beneficiary, including any dependents or survivors of the actual recipient of health-care assistance.... In determining whether, and to what extent, reimbursement should be sought or awarded under this chapter, the Mayor or a court, respectively, shall give due consideration to the extent of the beneficiary's injuries and his or her current and future needs, including the current and future needs of any dependents or survivors of the actual recipient of health-care assistance.

D.C.Code § 3–504(b) (1994 Repl.).

Following some inconclusive discussions between appellant's counsel and Corporation Counsel about the possibility of a waiver, the trial court on May 26, 1994, entered an order ruling that the District's exercise of discretion under § 3–504(b) was subject to court review for abuse. The trial court instructed the District to articulate the reasons for declining to waive enforcement of the reimbursement claim and demonstrate that it had considered the factors set forth in the legislation.

On July 18, 1994, appellant's counsel furnished to the District additional information relating to the personal and financial situation of appellant, then age 61, and Ms. Taylor's three surviving children, then ages 19, 15, and 12. In brief, the eldest child was married with one child of her own and was living with her husband. Appellant had legal custody and was the sole source of nongovernment support for the two younger children, who were good students, enjoyed good health except for certain needed dental work, and had hopes to go to college. Appellant received a pension of $1649 a month, net of medical insurance (covering appellant only) and federal taxes. She received an additional $354 monthly from social security as survivors' benefits on behalf of the two children, bringing net family income to just over $2,000 a month, or $24,000 a year. Appellant's total monthly household expenses, including an $877 mortgage payment on her home and $508 in other loan repayments, were listed as $2,592. Interim payments out of the settlement proceeds might be sufficient to cover the deficit for the time being, but appellant had spent all her lump sum retirement benefits of $31,186 on behalf of Ms. Taylor and the children, and if she should die before the children reached the age of majority, the children would likely be destitute.[6]

On July 28, 1994, the District submitted to the trial court a memorandum stating that it had reviewed the pertinent information and concluded that Ms. Taylor's survivors and dependents would not incur an "undue hardship" by virtue of a full recovery of the District's lien. It noted that the total recovery available to the survivors, including an emancipated child, and their attorneys was six times the amount of the District's lien. The trial court ruled that the District had not abused its discretion in declining to waive the claim and ordered payment to the District of the full amount of the lien from the settlement proceeds.

On appeal, appellant asserts that the District "failed to consider the extent of Tanya Taylor's injuries and the needs of survivors," as required by the statute. While the analysis articulated by the District might

---

**6.** In an affidavit submitted to the District dated January 14, 1994, appellant expressed her grave concern about what would happen to the children should she die or be unable to provide for them. She said: "I am struggling to provide for them. Any amounts received as a result of their mother's death will be set aside to provide for their needs, including the essentials of life, their support should I die, and their education. Amina and Stephen are honor students, and hope to go to college. Any amount that can be set aside for them will increase the possibility that this dream can be realized and will make their future at least a little bit more secure."

well have been more extensive,[7] we see no basis to reverse the trial court's ruling. In the situation here, where the beneficiary has died and her medical expenses already have been covered by the District, the extent of Ms. Taylor's injuries bear little if any relation to the question of assessment of present and future needs on which the statute is focussed. Further, the needs of survivors can only be meaningfully assessed in the light of all income sources available to them, which necessarily includes the net recovery from the third party.

The District quite properly argues that the exercise of discretion under § 3–504(b) must take into account the overall statutory context in which the issue arises. As its brief to us states: "[t]he statutory requirement of 'undue hardship' must be read in light of the limited income and financial difficulties that virtually all Medicaid recipients have as a result of their station in life. Appellant's reading of these provisions would make waiver of the lien the rule rather than the exception, because virtually all Medicaid recipients are indigent or nearly indigent. Virtually all recipients can make a case for saying they are more in need of amount[s] represented by the lien than the District or federal governments."

The history of the statute also suggests that full reimbursement was to be the norm. As originally enacted in 1984, the District's law permitted a Medicaid recipient to retain at least one-fifth of any recovery obtained from a third-party tortfeasor, regardless of whether the remaining funds would fully compensate the District. *See* D.C.Code § 3–507(c) (1988 Repl.). At the insistence of the federal government, that provision was replaced in 1990 with a provision expressly subordinating the beneficiary's entire right of

recovery to the District's right to reimbursement.[8] *See* D.C.Code § 3–507(c) (1994 Repl.) (quoted *infra* at [11] ).

██ It is an axiom of our administrative law jurisprudence that "when [an administrative] decision is based on an interpretation of the statute and regulations it administers, that interpretation will be sustained unless shown to be unreasonable or in contravention of the language o[r] the legislative history of the statute." *Reneau v. District of Columbia,* 676 A.2d 913, 917 (D.C.1996) (citations omitted). The Act commits to the discretion of the Mayor the judgment as to when "undue hardship" warrants waiver of the District's Medicaid reimbursement claim. Nothing in the Act compels the use of § 3–504(b) as a substitute or supplement to government assistance programs, with their own eligibility and level of payment provisions. In sum, we simply are unable to conclude, on the record here, that the trial court committed reversible error in its ruling on the District's refusal to waive under § 3–504(b).[9]

## II.

Appellant also argues that the District failed to make an appropriate contribution to attorneys' fees and costs pursuant to D.C.Code § 3–507(b), which provides:

> If the beneficiary prosecutes a claim on behalf of the District in a proceeding or settlement negotiations and incurs a personal liability for litigation costs and attorney's fees, the Mayor shall determine in good faith what, if any, contribution to those costs and fees would be appropriate, and that contribution shall be subtracted from the amount of the lien.

D.C.Code § 3–507(b) (1994 Repl.). Nothing in this record indicates that the District re-

---

**7.** Contrary to appellant's assertion, we do not think the record demonstrates a refusal by the District to consider the statutory factors.

**8.** *See* Report of the Council of the District of Columbia, Committee on Human Services, on Bill 8–305, the "Health-Care Assistance Reimbursement Amendment Act of 1990" (Dec. 7, 1989) ("Committee Report").

**9.** Before the trial court, the District asserted that the waiver decision was an exercise of executive

discretion not subject to judicial review. On appeal, the government does not press this proposition and we therefore do not address it. It may be noted that the language of § 3–504(b) envisions a role for the court as well as the Mayor with respect to a waiver. *See* D.C.Code § 3–504(b) ("[i]n determining whether ... reimbursement should be sought or awarded ... the Mayor or a court ... shall give due consideration ...").

quested that the beneficiary prosecute this claim or engaged the attorneys to act on the District's behalf or otherwise approved the fee arrangement or that the District approved the eventual settlement or that the appellant here under the contingent fee agreement incurred any personal liability for litigation costs or attorneys' fees. However, in the absence of a contrary argument by the District, we will assume for present purposes that § 3–507(b) applies and is subject to judicial review.[10]

■ The statute plainly does not require that the District contribute to attorneys' fees whenever litigation brought by the beneficiary is successful in whole or in part, creating a lien in favor of the District. Instead, the Mayor is to determine "what, *if any*, contribution to [the beneficiary's costs and attorneys' fees] would be appropriate."[11] On the facts here, the District argues, the priority scheme of the statute ensured that the attorneys' fees would be covered in full and that a considerable amount would remain for the beneficiary's survivors. The litigation was instigated without the participation of the District and the apparent purpose was not to recover health care expenses paid by the District but rather to seek a monetary recovery of several millions of dollars for the benefit of the beneficiary's survivors. An

ordinary creditor seeking payment of an outstanding debt out of a judgment recovered by its debtor would have no obligation to reduce its claim to reflect the cost of the litigation.[12]

Such considerations, when coupled with those already discussed in connection with the administrative decision under § 3–504(b), preclude a successful challenge on the record here to the District's decision against contribution under § 3–507(b).

## III.

Appellant argues that in any event, equitable principles stemming from the Act's grant of subrogation rights to the District[13] should be applied to limit the District's recovery where the plaintiff has compromised her claim at settlement, stating: "Given the circumstances of the settlement in this case, the issue may be stated as follows: where a tort plaintiff settles for less than the damage value of the case, because liability is problematic, is an equitable subrogee who paid medical expenses that were a part of the claim entitled to full reimbursement, or is the subrogee entitled instead to its equitable share of the settlement proceeds?" Appellant asserts that the "full value" of its claim here was on the order of $3 million, and

10. We note that § 3–507(b), unlike § 3–504(b), contains no mention of the courts. See note 9 *supra*.

11. The District notes that although a state is not prohibited under the Social Security Act from adopting a provision requiring its contribution of a proportionate share of costs and attorneys' fees, the Council did not exercise that option in enacting the Act before us. *See Dixon v. Johnson*, 430 N.W.2d 253, 255 (Minn.Ct.App.1988).

12. *Other somewhat analogous statutory schemes* permit full recovery without contribution toward litigation expenses. An employer (or its insurance carrier) that pays workers' compensation to an employee and is later reimbursed by means of the employee's successful litigation against a third party is not obligated to contribute to the employee's litigation costs. *Nguyen v. Liberty Mut. Ins. Co.*, 611 A.2d 541, 544 (D.C.1992); *see also Bloomer v. Liberty Mut. Ins. Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980) (no such obligation under Longshoremen's and Harbor Workers' Compensation Act). *Cf.* D.C.Code § 3–214.1 (District has lien against property of

recipient of public assistance under Old Age Assistance or Aid to the Disabled and preferred claim against the probate estate of such recipient).

13. Subrogation rights of the District are provided in § 3–502(b). The statute in addition grants the District an independent, direct cause of action against the third party for the unreimbursed cost of the health-care assistance provided, § 3–502(a), and permits the District to require the beneficiary to assign his claim to the District, § 3–502(b).

As already noted, the Act also creates a lien on the District's behalf upon any judgment or settlement against the third party "for that amount of the judgment or settlement that represents the care and treatment it has undertaken to provide or pay for as health-care assistance." Section 3–507(a). Appellant suggests that the quoted language limits the amount of the lien to a proportionate share of the recovery, but we think a more natural reading of the phrase is simply as defining the lien as encompassing the amount of health-care assistance expenditures by the District.

therefore the District's claim should be reduced in the same proportion as the settlement amount.

█ The trial court first reviewed the clear and admitted deficiencies in appellant's prospects for any recovery in a litigated proceeding, see note 2 *supra,* and concluded that in the circumstances here, "the only objective measure of the value in plaintiff's case is the actual settlement," and that "counsel's suggestion that the 'true value' of plaintiff's claim is many times the value of the settlement negotiated is not realistic; it is at best wishful thinking." We share the trial court's skepticism. Moreover, regardless of how one measures "true value," the statute does not contemplate a reduction in the District's lien proportionate to the reduction from "true value" to settlement value. The statutory scheme itself sets forth controlling provisions with respect to the distribution of any recovery from a third-party. Section 3–507(c) is specific in that regard:

> The beneficiary shall have the right to retain the amount of judgment *or settlement* that remains after the deduction of litigation costs, reasonable attorney's fees, or any amount necessary to reimburse the District for medical assistance payments the District has made on behalf of the beneficiary or the United States to the extent of the United States' financial participation in the medical assistance.

D.C.Code § 3–507(c) (1994 Repl.) (emphasis added). The Council evidently considered the possibility that a plaintiff may choose to settle a claim rather than try the case to judgment, but nevertheless prescribed the same distribution scheme for both circumstances. This decision by the Council precludes our adoption of some equitable principle of proportionate compromise.

Even more importantly, as already discussed, the Act contains two statutory exceptions to full reimbursement: the waiver provision of § 3–504(b) and contribution by the District to litigation costs under § 3–507(b). The Act itself defines the operative principles that govern these exceptions. There is no warrant for the judicial interposition of another, ill-defined exception to the explicit distributive scheme of the statute.[14]

In *Coplien v. Department of Health & Social Servs.,* 119 Wis.2d 52, 349 N.W.2d 92 (App.1984), the court rejected an argument akin to that of appellant here. The recipient settled for an alleged one-fourth of the "reasonable damages" and argued that the state's Medicaid lien should be proportionately reduced. *Id.* 349 N.W.2d at 93. The court rejected that argument in light of a statutory provision similar to our § 3–507(c). It stated that the legislature had "weighed medical recipients' need to be compensated for their injuries against the need for conservation of public funds and determined that the public funds have priority."[15] *Id.* 349 N.W.2d at 95. We follow the same road in looking to the statute to delineate the reimbursement scheme.

*Affirmed.*

---

14. It may well be that in determination of "undue hardship," the Mayor may take into account the fact of a settlement; but, as already indicated, we cannot accept appellant's suggestion that in the circumstances here, the Mayor must perforce exercise the waiver power of § 3–504(b).

15. Appellant argues that the Wisconsin statute at issue in *Coplien* contained no exceptions to its priority scheme, but we do not see this as a distinguishing feature of its analysis. Appellant cites us to cases in other jurisdictions that have reached a contrary result, but they involved statutes containing no priority or waiver provisions, and therefore the courts could feel open to invoke equitable principles.