**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 17 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**
**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

JANEY LEE COPELAND, a disabled
person, by and through her mother and
court-appointed guardian and
conservator, Marilyn Copeland,

       Plaintiff-Appellant,

v.

TOYOTA MOTOR SALES U.S.A.,
INC., a U.S. corporation; TOYOTA
MOTOR CORPORATION, a Japanese
corporation; TOYOTA AUTO BODY
CO., LTD., a Japanese corporation;
TOYOTA CENTRAL RESEARCH &
DEVELOPMENT LABORATORIES,
INC.; CALTY DESIGN RESEARCH;
TOYOTA TECHNICAL CENTER
USA, INC., a U.S. corporation;
TOYOTA MOTOR CORPORATE
SERVICES OF NORTH AMERICA, a
U.S. corporation; TOYOTA MOTOR
CORPORATION SAN FRANCISCO
OFFICE, a U.S. corporation,

       Defendants,

and

STATE OF KANSAS, Division of
Social and Rehabilitation Services,

       Defendant-Appellee.

No. 96-3181

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 90-1411-JTM)

Kenneth G. Gale, of Focht, Hughey & Calvert, L.L.C., Wichita, Kansas (David P. Calvert, of Focht, Hughey & Calvert, L.L.C., Wichita, Kansas, with him on the brief) for Appellant.

Robert R. Hiller, Jr., of Dept. of Social and Rehabilitation Services, Topeka, Kansas (Reid Stacey of Dept. of Social and Rehabilitation Services, Topeka, Kansas, with him on the brief) for Appellee.

Before **LUCERO**, **McWILLIAMS,** and **MURPHY**, Circuit Judges.

**MURPHY,** Circuit Judge.

Appellant Janey Copeland was injured in a 1988 automobile accident when she was ejected from the Toyota truck she was driving. Invoking the district court's diversity jurisdiction, Copeland sued and then settled with Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation (collectively "Toyota"). Thereafter, the United States District Court for the District of Kansas ordered that essentially all the net settlement proceeds be paid to the Kansas Department of Social and Rehabilitation Services ("SRS") pursuant to Kan. Stat. Ann. § 39-719a as reimbursement for the funds it dispersed for Copeland's medical treatment. Copeland appeals the district court's apportionment of the settlement proceeds.

On appeal, Copeland argues the district court erred by (1) failing to reduce SRS' recovery by the percentage of Copeland's negligence; (2) refusing to apply equitable subrogation principles to reduce or eliminate SRS' statutory subrogation right to the settlement proceeds; and (3) ordering SRS to pay attorney fees in the amount of 33.33% of SRS' medical assistance recovery rather than 40%. Upon *de novo* review of the district court's application and interpretation of state law, we affirm. *See Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

## I. BACKGROUND

Under the settlement agreement, Toyota agreed to pay Copeland $250,000 plus court costs of $120. The parties then applied to the district court for approval of the settlement. At a subsequent hearing, the district court stated that it would approve the settlement. The court also considered at this hearing Copeland's Motion to Apportion Proceeds, which urged the court to order that the settlement proceeds be paid to Copeland rather than to SRS. SRS, however, asserted its statutory subrogation rights to the proceeds under Kan. Stat. Ann. § 39-719a, which provides in part that when SRS has paid medical assistance and a third party has a legal obligation to pay such expenses, SRS "may recover the same from the [medical assistance] recipient or from the third party and shall be in all respects subrogated to the rights of the recipient." Kan. Stat. Ann. § 39-719a(a).

At the hearing, Copeland and SRS presented arguments concerning SRS' statutory right to be fully reimbursed from the settlement proceeds for medical assistance payments. Copeland argued that SRS' share of the settlement proceeds should be reduced or eliminated based on the application of equitable principles. Copeland also argued SRS' share of the proceeds should be reduced pursuant to Kan. Stat. Ann. § 39-719a(c), which provides that "[i]n the event of a recovery pursuant to K.S.A. 60-258a [Kansas' comparative negligence statute]," SRS' subrogation right "shall be reduced by the percentage of negligence attributable to the injured person." SRS asserted that its recovery should not be reduced under § 39-719a(c) because Copeland had not presented any evidence that she was at fault in the accident.

The court reserved ruling on both the apportionment and fault issues during the hearing, allowing the litigants to submit evidence of Copeland's fault in the days following the hearing. Accordingly, Copeland submitted evidence that she was under the influence of alcohol and was speeding at the time of the accident. SRS did not submit any evidence that Copeland was not at fault, nor did SRS contest the fault evidence submitted by Copeland.

On April 12, 1996, the district court filed an order approving the settlement but denying the apportionment proposed by Copeland. In the order, the court recited that SRS had paid "at least $244,814.30 in medical benefits to Copeland,"

-4-

and stated that "the apportionment sought by SRS . . . would give it virtually the entire settlement." The court noted that Copeland's proposed apportionment, on the other hand, "would provide almost all of the settlement to her" and only a small fraction to SRS.

The court further stated in the order that "[t]he parties agree generally that SRS' recovery may be reduced by the amount of Copeland's injuries which were the product of comparative fault." The court expressly declined, however, to make a finding as to Copeland's fault, stating that

> a determination of fault on the part of Copeland is inappropriate under the current circumstances. First, the argument is directly inconsistent with Copeland's previous position throughout this case, in which she ascribes 100% of the fault to Toyota. More importantly, there is no rational basis for the court, reviewing the depositions submitted by the parties, to ascribe a particular . . . degree of fault to Copeland.

In its order, the court also rejected Copeland's remaining arguments for reducing or eliminating SRS' subrogation share of the settlement proceeds, concluding that the subrogation statute provided SRS with a right to full reimbursement for all medical benefits extended. Finally, the court rejected Copeland's argument that SRS should be assessed a 40% rather than a 33.33% attorney fee under Kan. Stat. Ann. § 39-719a(b).

Copeland filed a Notice of Appeal on May 9, 1996. On May 10, 1996, the district court filed its "Judgment in a Civil Case." This judgment provided: "It is

-5-

ordered and adjudged, pursuant to the Memorandum and Order . . . ,filed April 12, 1996, that plaintiff's motion . . . is hereby granted as to approval of the settlement. The motion is denied as to the apportionment proposed by plaintiff." In a June 21, 1996 Journal Entry Apportioning Proceeds, the district court specifically apportioned $244,814.30 of the settlement proceeds to SRS, deducting from that amount litigation expenses and assessing a 33.33% attorney fee against SRS' share of the proceeds.[1]

## II. JURISDICTION

Before considering Copeland's claims, we must first determine the threshold jurisdictional issue of whether her May 9 Notice of Appeal triggers appellate jurisdiction or was fatally premature.

Federal Rule of Appellate Procedure 4(a)(2) provides that "[a] notice of appeal filed after the court announces a decision or order but before the entry of the judgment or order is treated as filed on the date of and after the entry." The Supreme Court in *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, 498 U.S. 269 (1991), held that "Rule 4(a)(2) permits a notice of appeal filed from certain nonfinal decisions to serve as an effective notice from a subsequently

---

[1]After deductions for litigation expenses and attorney fees, SRS' net recovery from the settlement proceeds was $136,737.35 and Copeland's net recovery was $2,665.46.

entered final judgment." *Id.* at 274. In allowing a premature notice of appeal to

mature and thereafter trigger appellate jurisdiction, the Court explained:

> Added to the Federal Rules in 1979, Rule 4(a)(2) was intended to codify a general practice in the courts of appeals of deeming certain premature notices of appeal effective.
>
> . . . .
>
> . . . Under Rule 4(a)(2), a premature notice of appeal does not ripen until judgment is entered. Once judgment is entered, the Rule treats the premature notice of appeal "as filed after such entry." Thus, even if a bench ruling in a given case were not "final" within the meaning of § 1291, Rule 4(a)(2) would not render that ruling appealable in contravention of § 1291. Rather, it permits a premature notice of appeal from that bench ruling to relate forward to judgment and serve as an effective notice of appeal *from the final judgment*.
>
> . . . .
>
> . . . Rule 4(a)(2) was intended to protect the unskilled litigant who files a notice of appeal from a decision that he reasonably but mistakenly believes to be a final judgment, while failing to file a notice of appeal from the actual final judgment.
>
> This is not to say that Rule 4(a)(2) permits a notice of appeal from a clearly interlocutory decision--such as a discovery ruling or a sanction order under Rule 11 of the Federal Rules of Civil Procedure--to serve as a notice of appeal from the final judgment. A belief that such a decision is a final judgment would *not* be reasonable. In our view, Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment. In these instances, a litigant's confusion is understandable, and permitting the notice of appeal to become effective when judgment is entered does not catch the appellee by surprise. Little would be accomplished by prohibiting the court of appeals from reaching the merits of such an appeal.

*Id.* at 273-76.

The rationale and holding of *FirsTier* warrant a similar result in the present case. Copeland could reasonably have mistaken the April 12 Memorandum and Order ("Order") as a final decision. The Order was not a clearly interlocutory decision. It effectively resolved the case, disposing of all the issues which Copeland raised below and now appeals. The Order identified the $244,814.30 subject to SRS' subrogation right and rejected each of Copeland's arguments for reducing SRS' subrogation share or assessing SRS a 40% attorney fee.

*FirsTier* requires this court to determine whether the Order would have been appealable if immediately followed by the entry of judgment. A decision is appealable only if it is final, meaning it "leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). This court stated in *Albright v. UNUM Life Insurance Co. of America*, 59 F.3d 1089 (10th Cir. 1995):

> [T]he touchstone of a final order is "a decision by the court that a party shall recover only a *sum certain*."
>     . . . .
>     . . . [However,] "an order is final even if it does not reduce the damages to a sum certain if the order sufficiently disposes of the factual and legal issues and any unresolved issues are sufficiently ministerial that there would be no likelihood of further appeal." That is, when the amount of damages awarded pursuant to a judgment on liability "speaks for itself," we can assume jurisdiction under an exception to the final order doctrine; however, if calculating damages would be complicated and the possible subject of a separate and future appeal, then we cannot assume appellate jurisdiction . . . .

*Id.* at 1092-93 (quoting Fed. R. Civ. P. 58 (emphasis added) and *Apex Fountain Sales, Inc. v. Kleinfeld*, 27 F.3d 931, 936 (3d Cir. 1994)) (citations and footnotes omitted). The *Albright* court determined it did not have jurisdiction because the calculations not completed in the appealed order were "not likely to be . . . ministerial and uncontroversial." *Id.* at 1093. Rather, they were likely to be "complicated and disputed." *Id.* The court acknowledged, however, that "there may be cases in which the lack of a sum certain will not preclude appellate review." *Id.* at 1094. The case at bar is one such case. The April 12 Order "spoke for itself," disposed of the factual and legal issues, and left only uncomplicated, undisputed, ministerial tasks to the subsequent Journal Entry. This court thus has jurisdiction.

## III. SUBROGATION

Copeland received medical assistance from SRS pursuant to the state's Medicaid program. Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states so that they may provide medical assistance to needy individuals. *See* 42 U.S.C. § 1396; *see also Williams v. Kansas Dep't of Soc. & Rehabilitation Servs.*, 899 P.2d 452, 455 (Kan. 1995). A state that chooses to participate in Medicaid must adopt and have approved a medical assistance plan which complies with the substantive requirements of 42 U.S.C. §§ 1396 *et seq.* and accompanying regulations. 42

U.S.C. § 1396a(a)(25) provides that the plan must require that the state agency administering the Medicaid program "take all reasonable measures to ascertain the legal liability of third parties" to pay for medical services received by Medicaid recipients, and, when legal liability is found, seek reimbursement for the medical assistance provided by the state to the extent of such liability. Consistent with this requirement, Kan. Stat. Ann. § 39-719a provides:

> (a) Where medical assistance has been paid by the secretary [of SRS] and a third party has a legal obligation to pay such medical expenses to or on behalf of the recipient, the secretary may recover the same from the recipient or from the third party and shall be in all respects subrogated to the rights of the recipient in such cases . . . . Payment of medical assistance by the secretary shall be secondary to any other insurance coverage or third party with a legal obligation to pay such medical expenses to or on behalf of the recipient.
> (b) Pursuant to this section unless otherwise agreed, the court shall fix attorney fees, which shall be paid proportionately by the secretary and the injured person, such person's dependents or personal representatives, in the amounts determined by the court. Attorney fees to be paid by the secretary shall be fixed by the court in an amount not to exceed 1/3 of the medical assistance recovered pursuant to subsection (a) for cases settled prior to trial, or in an amount not to exceed 2/5 of the medical assistance recovered pursuant to subsection (a) in cases when a trial is convened.
> (c) In the event of a recovery pursuant to K.S.A. 60-258a, and amendments thereto, the secretary's right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.

Section 60-258a, referenced in subsection (c), is Kansas' comparative negligence statute. Section 60-258a provides, in part, that

> [t]he contributory negligence of any party in a civil action shall not bar such party . . . from recovering damages . . . if such party's negligence was less than the causal negligence of the party or parties against whom claim for recovery is made, but the award of damages to any party in such action shall be diminished in proportion to the amount of negligence attributed to such party.

*Id.* § 60-258a(a).

## A. Reduction of SRS' Share According to Injured Party's Negligence

In the hearing on Copeland's Motion to Apportion Proceeds, the district court, as well as SRS, appeared to agree with Copeland that § 39-719a(c) was applicable to Copeland's settlement recovery and that Copeland's own negligence would proportionately reduce SRS' recovery. The district court thus allowed the parties to submit evidence of fault, and Copeland submitted evidence that she was under the influence of alcohol and was speeding at the time of the accident. SRS did not challenge Copeland's evidence either by presenting evidence that Copeland was not at fault or by presenting evidence that another party was responsible for the accident. In its April 12 order, however, the district court refused to attribute a percentage of fault to Copeland and necessarily refused to reduce SRS' recovery under Kan. Stat. Ann. § 39-719a(c). Because the only evidence before the district court indicated Copeland's fault and because that

-11-

evidence was not challenged, Copeland contends the district court was required to find that "Copeland's negligence was 100%" and thus was required to reduce SRS' subrogation right by 100%.

The reduction of SRS' recovery under § 39-719a(c) expressly occurs only "[i]n the event of a recovery pursuant to K.S.A. 60-258a." *Id.* § 39-719a(c). Copeland's settlement with Toyota, however, did not constitute a recovery pursuant to § 60-258a, and thus the court was not required to reduce SRS' recovery according to Copeland's negligence.

Section 60-258a does not address settlements, but instead contemplates a full trial on the merits in cases "[w]here the comparative negligence of the parties . . . is an issue." In such cases, § 60-258a provides that an injured party's negligence does not bar the party from bringing an action and recovering damages, so long as the party's negligence is less than the negligence of the alleged tortfeasor against whom recovery is sought. *See* Kan. Stat. Ann. § 60-258a(a). Section 60-258a further provides that

> the jury shall return special verdicts, or in the absence of a jury, the court shall make special findings, determining the percentage of negligence attributable to each of the parties, and determining the total amount of damages sustained by each of the claimants, and the entry of judgment shall be made by the court. No general verdict shall be returned by the jury.

*Id.* § 60-258a(b). When the fact finder determines a plaintiff is contributorily negligent, the statute provides that the total award of damages to the plaintiff shall be reduced "in proportion to the amount of negligence attributed" to the plaintiff. *Id.* § 60-258a(a); *cf. Mick v. Mani*, 766 P.2d 147, 150 (Kan. 1988) (discussing purposes of comparative negligence statute).

Section 60-258a thus speaks in terms of the jury or, in the event of a bench trial, the trial court making determinations as to the plaintiff's total damages and comparative negligence following a trial. At the conclusion of such a fact finding trial, the plaintiff's damage award is reduced by the court according to the negligence attributed to the plaintiff by the fact finder. Because the settlement in this case did not involve factual determinations of negligence and total damages following a trial, and because there was accordingly no reduced damage award, § 60-258a is inapplicable.

Like § 60-258a, § 39-719a(c) contains no language expressly referring to settlements. Copeland argues, however, that under § 39-719a(c), when there is a settlement, the court apportioning the settlement proceeds must make findings as to the negligence of the injured party, and then must reduce SRS' subrogation right according to the injured party's negligence. Section 39-719a(c), however, imposes no such requirement on the court.

The conclusion that § 39-719a(c) does not apply to the settlement in this case is consistent with the apparent purpose of the provision. When an injured party has been found by the fact finder at trial to be negligent and has therefore received a reduced damage award, § 39-719a(c) ensures that SRS' reimbursement for medical assistance may only be taken from the injured party's reduced damage award and not from the full damage determination. SRS' reimbursement for medical assistance payments will thus never exceed the actual damage award received by the injured party following a trial. In contrast to a fact finder's total damage determination following a trial, no possibility exists that the injured party's recovery in a settlement can be further reduced by a determination of that party's negligence. Much like the situation of the court reducing the total damage determination by the percentage of the injured party's own negligence following a trial, the amount of the settlement necessarily incorporates a reduction attributable to the injured party's own negligence, if any. Thus, the concerns addressed by § 39-719a(c) are not implicated in cases when an injured party settles with the alleged tortfeasor.

We conclude that because § 39-719a(c) is inapplicable, the district court did not err in refusing to make a determination of Copeland's negligence and did not err in refusing to reduce SRS' reimbursement of medical assistance based on Copeland's alleged negligence.

## B. Equitable Subrogation Principles

Copeland also asserts the district court erred in refusing to apply equitable subrogation principles to reduce or eliminate SRS' share of the settlement proceeds. Copeland argues that under equitable subrogation principles, namely the "made whole" rule, SRS is entitled to recover only after Copeland is fully compensated for her loss. Copeland asserts that she was not fully compensated by the $250,000 settlement because her total alleged damages exceeded $6.4 million, leaving SRS "entitled to nothing from this settlement."[2] Alternatively, Copeland asserts that SRS' "recovery must be prorated to allow subrogation on a proportional basis of damages to recovery." Copeland specifically argues that because the settlement represents only 3.886% of her total alleged damages, SRS should recover at most only 3.886% of the medical expenses it paid, less its share of litigation expenses and attorney fees. In rejecting Copeland's arguments for application of general equitable subrogation principles, the district court

---

[2]We note that the parties are not in accord as to the amount of Copeland's total damages. At the hearing to approve the settlement and apportion the proceeds, Copeland's mother testified that Copeland's total damages exceeded $6 million and testified that the total damage figure had been derived in part from a report prepared by an individual "with expertise in rehabilitation." Toyota's attorney objected to this testimony except insofar as the evidence of damages was offered solely to assist the district court in determining whether the settlement was just and reasonable. The district court did not make any findings as to Copeland's damages. Because our decision in this case is not dependent on the amount of Copeland's total damages, we need not determine the accuracy of Copeland's figure.

concluded that § 39-719a provides "a statutory right on the part of the state to full recovery of medical benefits provided to the plaintiff. . . . There is no provision for application of general common law or equitable principles, which require full recovery as a prerequisite to subrogation."

Kansas courts have not yet interpreted the language of § 39-719a to determine whether SRS' statutorily created right of subrogation is subject to traditional equitable subrogation principles. Copeland therefore relies on cases from other states in arguing that the statute incorporates unexpressed equitable principles because it creates only a subrogation right and does not provide for a lien. *See, e.g., Paulsen v. Department of Soc. & Health Servs.*, 898 P.2d 353, 354, 356 (Wash. Ct. App. 1995) (holding state's statutory right to recover medical payments was not subject to equitable subrogation principles because the statute provided for a lien in addition to a subrogation right and because statute's language emphasized full reimbursement to state). A review of the cases cited by Copeland and the specific language and structure of § 39-719a indicates that § 39-719a should not be read to incorporate the equitable principles urged by Copeland.

In construing medical assistance reimbursement provisions comparable to § 39-719a, courts have generally concluded that traditional equitable principles do apply to a state's statutory subrogation right absent some indication of legislative

intent to displace such principles.[3] *See White v. Sutherland*, 585 P.2d 331, 334

(N.M. Ct. App. 1978); *see also Hedgebeth v. Medford*, 378 A.2d 226, 230-31

(N.J. 1977).  We therefore look at the specific language of § 39-719a to determine

whether the Kansas legislature has expressed or otherwise indicated an intent to

abrogate or incorporate the equitable principles advanced by Copeland.[4]

---

[3]Although many courts have concluded that equitable principles do apply to the state's subrogation right under the relevant state statute, courts have not uniformly adopted the specific equitable principles suggested by Copeland, namely, the "made whole" rule and proportional recovery.  Of those cases in which courts have concluded equitable principles apply to the state's subrogation right, most have involved the question of whether the trial court had discretion to apportion proceeds between the state agency and the injured party in a manner that awarded the state less than full reimbursement for medical assistance payments.  In those cases, courts have typically held that, based on general equitable principles, the trial court does have such discretion and that 100% recoupment by the state is not statutorily required, but instead depends on the facts of the case.  *See, e.g., Smith v. Alabama Medicaid Agency*, 461 So.2d 817, 818-20 (Ala. Civ. App. 1984) (stating that the state's statutory subrogation right was subject to equitable principles and that the statute did not mandate total recoupment by the state in every case, "as such a determination depends on the facts of a particular case").

[4]As noted above, in arguing equitable principles apply to SRS' subrogation right, Copeland relies on the fact that the Kansas statute does not provide SRS with a lien securing reimbursement, but only creates a subrogation right. Copeland has not adequately explained, however, why the presence or absence of a lien should control this court's decision whether equitable principles have been abrogated under Kansas' statute.  Copeland argues generally that "principles of equity govern subrogation while they do not generally govern liens."  Copeland then cites cases in which courts have stated that the creation of a statutory lien in addition to, or instead of, a subrogation right "evidences legislative intent to displace equitable principles." *Paulsen v. Department of Soc. & Health Servs.*, 898 P.2d 353, 354, 356 (Wash. Ct. App. 1995) (stating that "[s]ubrogation and lien are separate equitable remedies designed to secure repayment of an underlying obligation" and that "[t]he structure and language of the statutes at

-17-

We first note that § 39-719a contains no language explicitly providing that SRS' subrogation right is limited by general equitable principles, nor is there language explicitly giving the court discretion to apportion proceeds according to such principles. *Cf. Davis v. City of Chicago*, 322 N.E.2d 29, 31-32 (Ill. 1974) (discussing statute providing that "[t]he court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the

---

issue support the presumption that the Legislature was cognizant of the historical distinction between the two remedies and created a statutory lien as an alternate means to recover"); *see also Indiana Dep't of Pub. Welfare v. Larson*, 486 N.E.2d 546, 548 (Ind. Ct. App. 1985) (stating "the equitable principles and discretion in determining reimbursement pursuant to a subrogation statute do not apply to reimbursement to the State for the Medicaid benefits" under statute providing only for a lien). These courts have not held, however, that the existence of a lien is a requirement for finding that equitable principles do not apply. Rather, a review of the cases interpreting medical assistance reimbursement statutes indicates that resolution of the issue is dependent on the particular language, provisions, and background of each statute.

In addition, although some courts have relied on the existence of a lien to determine that equitable principles have been abrogated, other courts have not found the creation of a lien to be determinative of legislative intent to retain or abrogate traditional equitable subrogation principles. *See, e.g., Underwood v. Department of Health & Rehabilitative Servs.*, 551 So.2d 522, 524-26 (Fla. Dist. Ct. App. 1989) (holding equitable principles apply to state's subrogation right under former Florida statute, despite existence of lien provision); *see also Walker v. District of Columbia*, 682 A.2d 639, 643-44 (D.C. 1996) (relying on other provisions of statute creating subrogation right and lien, rather than distinctions between subrogation and lien provisions, in determining equitable principles were abrogated). Further, there are no cases holding that equitable principles necessarily apply in the absence of a lien. We therefore reject Copeland's assertion that merely because the Kansas statute does not create a lien in addition to the subrogation right, the equitable principles advocated by Copeland are necessarily contained in the statute.

-18-

[state agency providing medical assistance]" and stating that the clear intent of this language was to permit trial courts to exercise discretion in apportioning any recovery between the state and injured person). Specifically, there is no indication in § 39-719a that SRS is limited to recovering a pro rata share of the medical assistance recipient's settlement proceeds, or that SRS may only recover if the recipient is fully compensated.

Although the statute does not indicate that SRS' recovery is limited by general equitable principles, the statute does expressly place a number of specific limitations on SRS' recovery. The primary statutory limitations on SRS' recovery are found in subsection (b) and subsection (c).[5] Section 39-719a(b) provides for the allocation of attorney fees, stating that "the court shall fix attorney fees, which shall be paid proportionately by [SRS] and the injured person . . . in the amounts determined by the court." Kan. Stat. Ann. § 39-719a(b). This subsection

---

[5]Other exceptions to SRS' subrogation right, not directly relevant in this case, are contained in subsection (a) of § 39-719a. *See* Kan. Stat. Ann. § 39-719a(a). This subsection provides that SRS may recover for medical expenditures from the medical assistance recipient and that SRS is subrogated to the rights of the recipient "except as provided under K.S.A. 39-786 and 39-787, and amendments thereto, or under section 303 and amendments thereto of the federal Medicare catastrophic coverage act of 1988, whichever is applicable." *Id.* The referenced provisions in this subsection address the treatment of the joint income and resources of the medical assistance recipient and his or her spouse. The provisions allow the recipient and spouse to divide joint income and resources into separate shares, and place limitations on the state's rights to the spouse's share.

thus provides the court with some discretion in allocating attorney fees. The subsection further provides, however, that the fees paid by SRS may not exceed either two-fifths or one-third of the medical assistance recovered, depending on whether there was a trial or a settlement prior to trial.[6] *See id.*; *cf. Walker v. District of Columbia*, 682 A.2d 639, 644 (D.C. 1996) (holding equitable principles statutorily abrogated partly because statute explicitly created exception to full reimbursement to government by requiring government to pay portion of medical assistance recipient's attorney fees). Section 39-719a(c), as discussed previously, also places a limitation on SRS' recovery when the injured party's total damage award has been reduced as a result of negligence attributed to the party pursuant to § 60-258a. *See* Kan. Stat. Ann. § 39-719a(c).

---

[6]Many cases raising the issue of whether the state's subrogation right is subject to equitable principles involve a request by an injured party that the state pay a portion of the injured party's attorney fees and other litigation expenses incurred in obtaining a recovery from a third party. For example, in *Hedgebeth v. Medford*, 378 A.2d 226 (N.J. 1977), an injured party contended that a pro rata share of the injured party's attorney fees were properly deducted by the trial court from the state's Medicaid reimbursement claim. The state supreme court agreed, holding that the state's statutory subrogation right was governed by equitable principles and that, in accordance with these principles, the state must pay a portion of the recipient's attorney fees. *See id.* at 374. Because the requirement that the state share attorney fees and other litigation expenses incurred by the injured party in pursuing a recovery is a prominent equitable principle in medical assistance reimbursement cases, the statutory expression of this principle in § 39-719a(b) is an indication that the Kansas legislature was aware of equitable principles and made a choice to include some equitable principles while excluding all others in its enactment of § 39-719a.

Because the statute contains these express limitations on SRS' subrogation right, we are reluctant to impose additional, implied limitations on SRS' recovery based on general equitable principles unexpressed in the statute.[7] *Cf. Walker*, 682 A.2d at 644 (stating "[t]he Act itself defines the operative principles that govern these exceptions. There is no warrant for the judicial imposition of another, ill-defined exception [based on equitable principles] to the explicit distributive scheme of the [subrogation] statute"); Norman J. Zinger, 2A Sutherland's Statutes and Statutory Construction § 47.11 (5th ed. 1992) (stating that "exceptions are not to be implied. Where there is an express exception, it comprises the only

_____

[7]Kansas courts have similarly refused to imply additional restrictions on an insurer's statutory subrogation right under Kansas' no-fault insurance statute, because the statute creating the subrogation right provides explicit exceptions to that right. *See, e.g.*, *Russell v. Mackey*, 592 P.2d 902, 906 (Kan. 1979) (discussing subrogation right, under Kansas' no-fault statute, of personal injury protection (PIP) insurance carrier to reimbursement of PIP benefits paid when the insured recovers by means of a settlement with third-party tortfeasor, and stating statute provides for full reimbursement to PIP carrier for PIP benefits paid, subject only to two statutory exceptions: the PIP carrier's recovery may be reduced for attorney fees and may be reduced for the comparative negligence of the insured when the insured's own recovery is reduced by the insured's negligence in an action brought pursuant to Kan. Stat. Ann. § 60-258a); *cf. Easom v. Farmers Ins. Co.*, 560 P.2d 117, 124-26 (Kan. 1977) (comparing Kansas no-fault statute to Florida no-fault statute which explicitly permitted equitable apportionment of insured's recovery between insured and PIP carrier, and holding that "an apportionment or equitable distribution theory" should not be injected into the Kansas no-fault law in part because the Kansas statute contained no explicit provision for equitable distribution).

limitation on the operation of the statute and no other exceptions will be implied").

The general language creating SRS' subrogation right further indicates that, with the exception of the limitations discussed above, SRS is entitled to full reimbursement for all medical assistance payments made to the recipient. The statute provides that when SRS has paid for medical care and when a third party has a legal obligation to pay those medical expenses, SRS "may recover *the same* from the recipient or from the third party and shall be *in all respects subrogated* to the rights of the recipient in such cases." Kan. Stat. Ann. § 39-719a(a) (emphasis added). As the district court indicated, the statute thus "'emphasize[s] reimbursement, which by definition denotes restoration of an amount equivalent to that expended or repayment in full.'" April 12, 1996 Memorandum & Order at 4 (quoting *Paulsen*, 898 P.2d at 356); *cf. Dale v. Gubin*, 879 S.W.2d 699, 700-701 (Mo. Ct. App. 1994) (rejecting argument, based on equitable principles, that state's reimbursement must be reduced by proportionate share of attorney fees because statute unambiguously provided that state agency "shall have a right to recover the full amount of payments made to a provider"). *See generally Unified Sch. Dist. No. 259 v. Sloan*, 871 P.2d 861, 865-66 (Kan. Ct. App. 1994) (rejecting, in insurance contract case, application of general equitable principles where insurance contract provisions creating subrogation right expressly provided for complete reimbursement).

After reviewing the statutory scheme and specific language of § 39-719a, we conclude that SRS' subrogation right is not subject to the equitable principles urged by Copeland. As in other cases in which courts have concluded equitable subrogation principles have been statutorily abrogated, the Kansas statute's explicit provisions limiting SRS' recovery in certain circumstances and the statute's language emphasizing full reimbursement for medical assistance payments made by SRS are indications that the legislature did not intend to reduce or eliminate SRS' recovery when the injured party has not been fully compensated by the injured party's settlement with the tortfeasor.[8] The statute's provisions and specific language instead indicate that the Kansas legislature has "weighed

---

[8]*Cf. Walker*, 682 A.2d 643-44 (holding government was entitled to full reimbursement for Medicaid expenses although lawsuit was settled for less than alleged total damages, and noting court was precluded from adopting some equitable principle of proportionate compromise because the statute provided a distribution scheme and contained two express exceptions to full reimbursement: the government was required to contribute to the Medicaid recipient's litigation costs, and the government was allowed to waive its reimbursement claim in certain circumstances)*; Coplien v. Department of Health & Soc. Servs.*, 349 N.W.2d 92, 93-95 (Wis. Ct. App. 1984) (holding statute providing state with subrogation right for medical assistance payments abrogated equitable principles because statute prioritized distribution of proceeds, and rejecting recipient's argument that because she was not made whole by her settlement, the state could only recover a pro rata share of the settlement proceeds); *Waukesha County v. Johnson*, 320 N.W.2d 1, 3-4 (Wis. Ct. App. 1982) (holding statute providing county with subrogation right rendered traditional equitable principles, including "made whole" rule, inapplicable because statute specifically set forth the rights of the county and medical assistance recipient to maintain actions and recover from a third-party tortfeasor).

medical recipients' need to be compensated for their injuries against the need for conservation of public funds," and has determined that, in general, "the public funds have priority." *Coplien v. Department of Health & Soc. Servs.*, 349 N.W.2d 92, 95 (Wis. Ct. App. 1984).

We accordingly reject Copeland's arguments that the district court erred in refusing to eliminate SRS' recovery based on the "made whole" rule or to reduce SRS' recovery on a proportionate basis.

### C. Attorney Fees Assessed to SRS' Share of Settlement Proceeds

Copeland finally argues that under § 39-719a(b), SRS should have to pay attorney fees in the amount of 40% rather than 33.33% of SRS' medical assistance recovery because a trial was convened. Kan. Stat. Ann. § 39-719a(b) provides that the court shall apportion attorney fees between SRS and the medical assistance recipient, but that SRS' share of attorney fees may not exceed one-third of its medical assistance recovery "for cases settled prior to trial," or two-fifths of its medical assistance recovery "when a trial is convened." Under the clear and unambiguous language of this statutory provision, SRS' share of attorney fees could not exceed one-third of its recovery because Copeland settled with Toyota before trial.

Copeland nevertheless contends that the hearing on the motions to approve the settlement and apportion the proceeds constituted a "trial" for purposes of

-24-

§ 39-719a(b). In so arguing, Copeland relies on passing references by the district court and parties to the hearing as a "trial." Copeland also relies on general definitions of the term "trial" to establish that the hearing constituted a trial.

Although the district court may have referred to the hearing as a "trial," this reference clearly does not constitute a determination, as Copeland suggests, that the hearing was a trial for purposes of § 39-719a(b). Further, the statutory language of § 39-719a(b), distinguishing cases settled before trial from cases settled after a trial is convened, contemplates the convening of a trial on the merits between the injured party and the third-party tortfeasor, and does not refer to proceedings following a settlement which only address the judicial approval of the settlement and the allocation of settlement proceeds.

In this case, Copeland settled with Toyota before a trial on the merits of the case was convened. The subsequent proceedings to apportion the proceeds were thus irrelevant to the determination, under § 39-719a(b), of what percentage of attorney fees applied to SRS' recovery. This court therefore rejects Copeland's argument that SRS should have been required to pay attorney fees in the amount of 40% of its medical assistance recovery.

## CONCLUSION

The district court properly refused to apply Kan. Stat. Ann. § 39-719a(c) to reduce SRS' recovery based on Copeland's alleged negligence. The district court

also properly refused to apply general equitable principles to reduce or eliminate SRS' recovery. Finally, the district court's order that SRS pay attorney fees in the amount of one-third of the medical assistance recovered was proper under § 39-719a(b). We therefore **AFFIRM** the judgment of the district court.